*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0382p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SARMAD ABDULNOUR,

>*Plaintiff-Appellant,*

*v.*

No. 06-4590

CAMPBELL SOUP SUPPLY COMPANY, LLC, *et al.*,
>*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 05-07205—Jack Zouhary, District Judge.

Argued: July 25, 2007

Decided and Filed: September 19, 2007

Before: COLE and GILMAN, Circuit Judges; MARBLEY, District Judge.[*]

---

**COUNSEL**

---

**ARGUED:** Richard R. Malone, MALONE, AULT & FARELL, Toledo, Ohio, for Appellant. John J. Siciliano, SHUMAKER, LOOP & KENDRICK, Toledo, Ohio, for Appellees. **ON BRIEF:** Richard R. Malone, Milton E. Pommeranz, MALONE, AULT & FARELL, Toledo, Ohio, for Appellant. John J. Siciliano, Mechelle Zarou, SHUMAKER, LOOP & KENDRICK, Toledo, Ohio, for Appellees.

---

**OPINION**

---

ALGENON L. MARBLEY, District Judge.

## I. INTRODUCTION

Plaintiff-Appellant appeals the district court's order granting summary judgment to his employer on his national origin discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and Ohio Revised Code (O.R.C.), § 4112.01. Plaintiff, an Iraqi citizen, claims that Defendants fired him based on his national origin. The parties stipulate that Plaintiff established a *prima facie* case and that Defendants proffered a legitimate, non-discriminatory reason for his

---

[*] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

discharge. The district court granted summary judgment after finding that Plaintiff failed to meet his burden to provide evidence that tends to show that Defendants' stated reason was pretextual. Under the standard set forth in *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078 (6th Cir. 1994), the district court found that Plaintiff failed to show that Defendants' reason: (1) had no basis in fact; (2) did not actually motivate Plaintiff's termination; or (3) was insufficient to warrant Plaintiff's termination. The district court's opinion is sound and well reasoned; thus, we **AFFIRM**.

## II. BACKGROUND

Plaintiff-Appellant Sarmad Abdulnour ("Plaintiff") is an Iraqi national who holds dual citizenship in Iraq and Canada. In 1979, Plaintiff came to the United States on a student visa to pursue an engineering degree. He received such a degree from Lawrence Technological University in Michigan and subsequently obtained a masters degree in civil engineering from Wayne State University in Michigan. After graduation, he moved to Canada to pursue his career. Plaintiff received permanent resident status in the United States in 1999 and began searching for employment in this country while living and working in Canada.

In February 2003, an employment recruiter, ITS Technologies, contacted Plaintiff regarding a job opening at Campbell Soup Supply Co., LLC ("Defendant" or "Campbell"). In March 2003, Plaintiff had a telephone interview with George Gubernath ("Gubernath"), Campbell's operations manager. Subsequently, he visited Campbell's Ohio plant and interviewed with several of his potential supervisors, including Defendant Kevin Rippee ("K. Rippee"). On March 12, 2003, Plaintiff accepted Campbell's offer of employment. Both Gubernath and K. Rippee testified that Plaintiff identified himself as an Iraqi citizen during his interviews with them. Plaintiff denies that he told his supervisors that he was of Iraqi descent prior to his first day of employment.

Plaintiff began his employment with Campbell in April 2003. He was an area supervisor in the filling department where he supervised approximately thirty employees on the canning floor. Shortly after beginning his employment at Campbell, Plaintiff attended a training program that lasted one week, but like most of Campbell's new supervisors, he did not complete the program due to the pressing needs of his department. During his second week of employment, Plaintiff also attended a course in food canning at Purdue University.

In April 2003, Plaintiff was a supervisor on the first shift. His immediate boss was K. Rippee. K. Rippee testified that he observed several problems with Plaintiff's work and fielded complaints from several employees under Plaintiff's supervision regarding Plaintiff's treatment of them and his management style in general. Specifically, K. Rippee alleges that Plaintiff: (1) was not on the floor enough; (2) failed to be on the floor at key times; (3) lacked an understanding of what was occurring in his area; (4) demeaned employees beneath him; and (5) exhibited poor communication skills. Defendant Operations Manager Leonard Giesige ("Giesige") confirms that he was aware of these concerns. In addition, Giesige testified that he personally observed problems with Plaintiff's job performance, including several incidents in which Plaintiff allegedly ignored a light indicating that a line was down in his area. K. Rippee testified that he met with Plaintiff on two separate occasions in May and June 2003 to discuss his concerns about Plaintiff's job performance and supervisory style. Plaintiff denies that these meetings took place.

In July 2003, Campbell transferred Plaintiff to the second shift. Defendant Alan Rippee (A. Rippee), K. Rippee's brother, was Plaintiff's immediate supervisor on this shift. Plaintiff states that he had a great working relationship with A. Rippee and that A. Rippee never discussed any problems relating to deficiencies in Plaintiff's job performance with him. A. Rippee disagrees. He testified to: Plaintiff's lack of communication skills, mistreatment of employees under his charge, absence from the floor, and personal telephone and internet usage. He specifically noted that Plaintiff was

demeaning to the hourly employees and unwilling to work cooperatively with his senior coordinators.

Additionally, Fred Avalos ("Avalos") and Glen Lockhart ("Lockhart"), hourly employees and senior coordinators who served under Plaintiff, contacted Giesige about Plaintiff's supervision. They stated that Plaintiff would not work constructively with them and demeaned the hourly employees, especially women. Plaintiff allegedly berated one employee until she broke down crying. Lockhart commented that Plaintiff was "the worst supervisor ever."

Plaintiff denies demeaning his employees, making unauthorized phone calls, or otherwise performing poorly at his job. In support of these assertions, Plaintiff provides the affidavits of hourly employee and shop steward Brian Bomer ("Bomer"), and hourly employee Ardna Helberg ("Helberg"), who both testified that Plaintiff was a good supervisor and caught onto his job quickly. Planitiff fails to note, however, that in his deposition, Bomer testified at length that, "across the board," employees under Plaintiff's supervision complained about his treatment of them.

After receiving complaints from both Plaintiff's supervisors and supervisees, Giesige decided to terminate Plaintiff. On October 14, 2003, approximately six months after Plaintiff began his employment at Campbell, Giesige asked Plaintiff and Defendant Human Resources Director Nick Martinez ("Martinez") to meet in his office. Giesige and Martinez, without citing specific misconduct, told Plaintiff that his employment was not working out due to a conflict in "management style or personality." In discussing this "personality conflict," Plaintiff alleges that Giesige said that "maybe it was the people of Northwest Ohio [who] have a problem with you." Nevertheless, Plaintiff admits that no one made any disparaging remarks about his race or national origin while he was employed at Campbell.

The parties dispute whether Plaintiff was expressly terminated on October 14, 2003. It is undisputed that Plaintiff worked for an additional week, received an additional four weeks of pay, and refused a severance package that required signing a release of liability against Campbell. On March 3, 2004, Plaintiff filed charges with the Ohio Civil Rights Commission. On December 16, 2004, the Commission dismissed Plaintiff's action for lack of probable cause. Plaintiff filed this action on May 6, 2005.

Plaintiff's complaint states causes of action under Title VII and O.R.C. § 4112, as well as various common law claims. The district court granted summary judgment to Defendants. For the purposes of this appeal, Plaintiff only challenges the district court's judgment as to his Title VII claim and his O.R.C. § 4112 claim.

## III.  STANDARD OF REVIEW

We review de novo the grant of summary judgment. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although all "inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion," *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962), summary judgment must be entered against the opposing party if it "fails to make a showing sufficient to establish the existence of an element essential to . . . [its] case, and on which . . . [it] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If "a reasonable jury could return a verdict for the nonmoving party," summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is insufficient, however, simply to show "that there is some metaphysical doubt as to the material facts." *Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In addition, "the

mere existence of a scintilla of evidence in support of Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## IV. ANALYSIS

Plaintiff alleges that he was discharged based on his national origin in violation of both Title VII, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and O.R.C. § 4112.01 *et seq.* Ohio courts examine employment discrimination claims under federal case law. *Plumbers & Steamfitters Comm. v. Ohio Civ. Rights Comm'n*, 421 N.E.2d 128, 131 (1981).

In order to establish a *prima facie* case for Title VII national origin discrimination, a plaintiff must proffer either direct or circumstantial evidence of discrimination. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Plaintiff concedes that he has not offered any direct evidence that he was subjected to discrimination based on his national origin.

Plaintiff may establish a circumstantial *prima facie* case by raising an inference of discrimination pursuant to the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). A plaintiff must show that: (1) he is a member of a protected class; (2) he was terminated; (3) he was qualified for the position; and (4) he was replaced by a person outside a protected class or was treated differently than a similarly situated, non-protected employee. *Dicarlo,* 358 F.3d at 415. Defendants concede that Plaintiff has established a circumstantial *prima facie* case of discrimination. Thus, under the *McDonnell Douglas* paradigm, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for Plaintiff's termination. *Id*. at 414. Defendants state that they fired Plaintiff because of his poor performance, personality conflicts, and numerous complaints from his supervisees and supervisors. Plaintiff concedes that, if true, poor performance is a legitimate, non-discriminatory reason for his termination.

Given that Defendants have proffered a legitimate reason for Plaintiff's termination, the burden shifts back to Plaintiff "to *prove by a preponderance of the evidence* that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (citation omitted and emphasis added). Plaintiff may establish that Defendants' proffered reason is mere pretext by establishing that it: (1) has no basis in fact; (2) did not actually motivate Plaintiff's termination; or (3) was insufficient to warrant Plaintiff's termination. *Manzer*, 29 F.3d at 1084. Plaintiff contends that he meets either of the first two criteria for showing pretext under *Manzer*. Each will be discussed in turn.

A.      Defendants' Proffered Reason Has No Basis in Fact

Under the first prong of *Manzer*, a Plaintiff must put forth "evidence that the proffered bases for the plaintiff's discharge never happened, *i.e.,* that they are 'factually false.'" *Id.* Plaintiff asserts that there are issues of material fact in dispute surrounding Plaintiff's job performance that would allow a jury to conclude that Defendants' proffered reason is factually false, and thus precludes this Court from imposing summary judgment. Specifically, Plaintiff asserts that he did not use Campbell's phones or internet for personal use, that K. Rippee lied about confronting Plaintiff twice in the months of May and June about his poor job performance, that Defendants did not know that he was Iraqi at the time they hired him, and that he generally performed his duties well. As evidence, Plaintiff offers his own testimony and the testimony of Bomer and Helberg, who stated that they never personally observed Plaintiff perform his duties deficiently. In one endorsement upon which Plaintiff relies, Helberg testified that Plaintiff was "just as good as the rest of them."

In arguing that the facts underlying the stated reason for his discharge never happened, Plaintiff misconstrues the law of this Circuit. Plaintiff is required to show "more than a dispute over

the facts upon which the discharge was based." *Braithwaite v. The Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001). Plaintiff must put forth evidence that Defendants did not "honestly believe" in the given reason for Plaintiff's termination. *Id.*; *see also Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) ("As long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect."). A jury "may not reject an employer's explanation . . . unless there is a sufficient basis *in the evidence* for doing so" because such a rejection would impermissibly shift the burden of persuasion from the plaintiff to the defendant; "the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer*, 29 F.3d at 1083.

In determining whether Defendants had an "honest belief" in the proffered basis for discharge, we examine whether Campbell established a "reasonable reliance" on the particularized facts available to the company in firing Plaintiff. *Braithwaite*, 258 F.3d at 494. The critical inquiry is whether Defendants made a "reasonably informed and considered decision." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998). The district court correctly held that Defendants held an honest belief that Plaintiff was performing poorly at his job. At the time of his termination, Giesige had before him: (1) complaints from K. Rippee that Plaintiff was not adequately performing his job; (2) complaints from A. Rippee that Plaintiff was not adequately performing his job; (3) Giesige's personal observations of Plaintiff failing to address problems on the canning line on several occasions; (4) complaints from several hourly employees that Plaintiff was demeaning to them, failed to be on the floor at critical times, refused to communicate with them, and that he was "the worst supervisor ever."

Plaintiff fails to provide evidence that these complaints were false, inaccurate, or not made. Plaintiff challenges the veracity of his employer's stated reason for his termination by pointing out that his supervisors did not make contemporaneous records of his alleged poor performance. As the district court noted, however, Fed. R. Civ. P. 56(e) expressly allows affidavits drafted after the incident to be considered in support of a motion for summary judgment. Additionally, the fact that two hourly employees, Helberg and Bomer, testified that they never personally experienced problems with Plaintiff does not negate Defendants' honest belief, especially in light of the fact that Bomer testified that other employees "across the board" thought Plaintiff was a poor supervisor.

As the record reflects, there was a myriad of problems with Plaintiff's job performance and treatment of his subordinates that justified Defendants' decision to fire Plaintiff. This, however, is not what Defendants told Plaintiff during their final meeting. Defendants did not tell Plaintiff he was being fired for poor performance, but rather because of an unspecified "personality conflict." While the law does not specifically require an employer to list every reason or incident that motivates its decision to terminate an employee, we are skeptical of undocumented accounts of employee conduct that may have been created post-termination. Under the facts of this case, however, ample evidence exists that indicates that Plaintiff's performance was inadequate to meet his job requirements. In sum, Plaintiff has not put forth sufficient evidence for a jury reasonably to conclude that Defendants did not have an honest belief that Plaintiff performed his job duties poorly.

> B.     Defendants' Proffered Reason Did Not Actually Motivate Plaintiff's Termination

Under *Manzer*'s second prong, Plaintiff can establish pretext by showing that it "was more likely than not" that Defendants terminated Plaintiff based on an illegal motivation. *Manzer*, 29 F.3d at 1084. Put another way, Plaintiff must show "that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id.* But here, the sheer weight of the evidence supports Defendants, not Plaintiff. As the district court correctly held, "the record here clearly supports Plaintiff's termination for nondiscriminatory reasons . . . . And the record is abundantly clear that discrimination did not

occur during Plaintiff's employment." Contrary to Plaintiff's assertions, the fact that employees discussed the ongoing war in Iraq during their lunch breaks does not make it more likely than not that Defendants fired him because he is Iraqi. The ongoing war is a common topic of discussion among the citizens of this country. Furthermore, Plaintiff stated that he never heard any disparaging comments toward him based on his nationality and, in fact, the record reflects that his supervisors took proactive steps to stop potential harassment. Moreover, we agree that Giesige's comment that "the people of Northwest Ohio" may have a problem with Defendant could be construed to be discriminatory. In the context of a discussion about personality and management conflicts, however, Giesige's comment could just as easily be construed as a statement about Midwestern congeniality. Especially where Plaintiff concedes that he was never subjected to anti-Iraqi hostility while employed at Campbell, we cannot conclude that Giesige's comment is sufficient to create a triable issue of fact.

Finally, Plaintiff heavily relies on *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), in support of his assertion that issues of material fact still exist sufficient to survive a motion for summary judgment. Plaintiff argues that the district court misconstrued the law set forth in *Reeves*. Plaintiff is incorrect. In *Reeves*, the Supreme Court held that a "plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." 530 U.S. at 148. In *Reeves*, the Plaintiff made a "substantial showing" that his employer's stated reason for terminating him was false. *Id.* at 144. In this case, apart from his own testimony, Plaintiff fails to adduce any evidence that he was fired for a reason other than poor job performance. Under *Manzer*, the burden is on Plaintiff to put forth sufficient evidence for a reasonable jury to conclude that Defendants' stated reason is false. He has not done so in this case. As the Supreme Court noted in *Reeves*, summary judgment is appropriate, as in this case, if the plaintiff "only created a weak issue of fact as to whether the defendant's reason was untrue" and there is ample evidence to support the employer's position. *Id.* at 148.

## V. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.