**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0525n.06

**No. 08-3557**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jul 30, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| DAVID McDERMOTT, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CONTINENTAL AIRLINES, INC., | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

Before: SUTTON and GRIFFIN, Circuit Judges; LIOI, District Judge.[*]

SUTTON, Circuit Judge. At stake in this state-law diversity action is whether Continental

Airlines wrongfully discharged David McDermott in retaliation for complaints he made about the

airline or permissibly discharged him because he was not forthcoming or truthful about an accident

at the Port Columbus Terminal. The district court concluded that Continental is entitled to judgment

as a matter of law, and so do we.

I.

In August 1989, Continental hired McDermott and he held a variety of positions with the

airline over the next 17 years. He transferred to the Port Columbus Airport in 2002 or early 2003

and worked as a Customer Service Agent in Columbus for the remainder of his employment. During

---

[*] The Honorable Sara Lioi, United States District Judge for the Northern District of Ohio, sitting by designation.

that time, McDermott made at least thirteen safety complaints to Mark Dooley, Continental's general manager in Columbus, or to the airline's Safety Hotline.

Early on the morning of February 2, 2006, a Continental baggage cart caused "extensive" damage to a steel door frame, a baggage belt and an overhead baggage carrousel about seven-and-a-half feet above the floor, ROA 232, rendering America West's baggage system inoperable. When contacted about the accident, Dooley agreed to investigate it. After his investigation, Dooley concluded that McDermott was "not being forthcoming" about his role in the accident, ROA 751, based on the written statements McDermott gave Dooley about what happened on the night of the accident, statements provided by other employees working that night and a statement by an America West employee who implicated McDermott in the incident. Dooley discharged McDermott on February 15th for not being "truthful or forthcoming during [Dooley's] investigation," ROA 248, and Continental rejected McDermott's internal appeal.

McDermott sued Continental in state court, premising his state-law, wrongful-discharge claim on the ground that the airline fired him for reporting safety violations. Continental removed the suit to the federal district court based on diversity jurisdiction. *See* 28 U.S.C. §§ 1332 and 1441. Continental eventually moved for summary judgment, which the district court granted.

II.

A.

McDermott first challenges the district court's disposition of his wrongful-discharge claim. Ohio recognizes a common law tort for wrongful-discharge, which requires the claimant to prove four things: (1) "[t]hat a clear public policy existed and was manifested in a state or federal

constitution, statute or administrative regulation, or in the common law"; (2) "[t]hat dismissing [the plaintiff] under circumstances like those involved in [the] dismissal would jeopardize the public policy"; (3) that the "dismissal was motivated by conduct related to the public policy," and (4) "[the defendant] lacked [an] overriding legitimate business justification for the dismissal." *Collins v. Rizkana*, 652 N.E.2d 653, 657–58 (Ohio 1995) (internal citations and alterations omitted). The first two elements implicate questions of law, and the last two implicate questions of fact. *Id.* at 658.

No one disputes that McDermott established the first two elements. McDermott claims that Continental fired him because he made repeated safety complaints, ROA 18, 22, and dismissing employees for making workplace-safety complaints "clearly contravenes the public policy of Ohio." *Pytlinski v. Brocar Prods., Inc.*, 760 N.E.2d 385, 388 (Ohio 2002); *see also Kulch v. Structural Fibers, Inc.*, 677 N.E.2d 308, 323–24 (Ohio 1997). That leaves two related questions: (1) whether McDermott provided sufficient factual support for his allegation that his safety complaints, as opposed to his unforthcoming and untruthful responses to the investigation of his accident, *caused* the discharge and (2) whether Continental had an *overriding justification* for the discharge—namely, his involvement in the accident at Port Colombus and his failure to cooperate in the investigation.

In answering these questions, we will assume, as the parties have assumed, that the Ohio courts would apply the *McDonnell Douglas* burden-shifting framework in considering these issues. *See McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). The Ohio courts have embraced this framework in numerous employment-discrimination contexts, and we think it fair to assume that they would do the same here. *See, e.g., White v Mt. Carmel Med. Ctr.*, 780 N.E.2d 1054, 1063–64 (Ohio Ct. App. 2002) (statutory workers' compensation retaliation claims); *Kohmescher v. Kroger*

*Co.*, 575 N.E.2d 439, 441–43 (state age-discrimination claims); *see also Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 373–74 (6th Cir. 1999) (granting summary judgment on an Ohio wrongful-discharge claim where the employee did not establish his employer's overriding justification was pretextual); *Prestige Cas. Co. v. Mich. Mut. Ins. Co.*, 99 F.3d 1340, 1348 (6th Cir. 1996) (holding we must "predict" how the Ohio Supreme Court would rule "by looking to all available data") (internal quotation marks omitted).

Under *McDonnell Douglas*, McDermott may establish retaliation either by introducing direct evidence of retaliation or by offering circumstantial evidence that supports an inference of retaliation. *See DiCarlo v. Potter*, 358 F.3d 408, 420 (6th Cir. 2004). McDermott produced no direct evidence of retaliation, such as a statement from Dooley that he fired McDermott because he complained about the airline's safety policies. *See Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005). He instead presents a circumstantial case—that other evidence permits the inference that his complaints, not his response to the accident investigation, caused his discharge. To make out such a case, he must show a causal link between the safety complaints and his discharge, then Continental must offer a legitimate nondiscriminatory reason for the termination, after which McDermott must show that the proffered reason is pretextual. *See White*, 780 N.E.2d 1063–64.

*Causation*. McDermott's efforts to establish a causal link between his safety complaints and his discharge come up short. First, a jury could not infer causation from Dooley's firing of Ivan Soto in 2002. McDermott alleges that, although the official reason Dooley fired Soto was that he and his family bypassed a security checkpoint while on vacation, the airline in truth fired him

because he had been "very verbal about the lack of safety" at the airline. Appellant's Br. at 23. But the gap in time between Soto's discharge and McDermott's discharge undermines this argument.

In the age-discrimination context, the Ohio Supreme Court has made it clear that "there is no permissible inference that the employer was motivated" by improper considerations absent a causal link between the allegedly improper conduct and the plaintiff. *Byrnes v. LCI Comm. Holdings Co.*, 672 N.E.2d 145, 149 (Ohio 1996). *Byrnes* held that multiple statements suggesting animus towards older workers over a four-year period prior to the plaintiffs' termination were too "distant in time and in fact" to support such a causal link. *Id.* at 148. The most recent statement had been made more than a year before the terminations at issue and related to other employees. *Id.*

The same problem exists here: Too much distance in time separates the Soto and McDermott incidents to draw any meaningful inferences between them. Dooley fired Soto almost four years before he fired McDermott, and McDermott has not identified any causal link between the two firings. The two discharges did not arise out of the same series or set of events, and the circumstances surrounding the two discharges have little in common.

Relying on *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 356 (6th Cir. 1998), McDermott persists that "circumstantial evidence establishing the existence of a discriminatory atmosphere at [Continental's] workplace in turn may serve as circumstantial evidence of individualized discrimination directed at" McDermott. But *Ercegovich* cannot carry the weight that McDermott places on it. The circumstantial evidence in *Ercegovich* consisted of discriminatory remarks that the parties could address through brief witness testimony. *See id.* Addressing Soto's

termination, by contrast, would require litigating an entire wrongful discharge claim. *See Williams v. Nashville Network*, 132 F.3d 1123, 1130 (6th Cir. 1997) (affirming exclusion of evidence that would have led to a mini-trial about why a different employee was not hired). *Ercegovich* also involved "numerous age-biased statements allegedly made by several individuals occupying" management positions, 154 F.3d at 354, which suggested that a discriminatory atmosphere pervaded Goodyear. McDermott's focus on *one* incident four years earlier does not suggest an equally *pervasive* atmosphere. It instead is analogous to an "isolated and ambiguous comment[]" that is "too abstract, in addition to being irrelevant[,] . . . to support a finding" against Continental. *Id.* at 355 (internal quotation marks omitted).

Second, McDermott cannot create a genuine issue of material fact by identifying two derogatory comments that Dooley made to McDermott. Dooley told McDermott that he "was making smart-ass remarks on the radio," ROA 540, after McDermott refused to place an unaccompanied, checked bag in a plane's cabin because it allegedly violated FAA and TSA regulations. Dooley also stated "every time you come in here to complain about [a specific co-worker], it's like you're bringing a shotgun in here and complaining," ROA 593, when McDermott reported a safety concern. But the remarks go to Dooley's objection about *how* McDermott communicated his safety complaints, not to *the content* of the safety remarks. *See Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025–26 (6th Cir. 1993).

Moreover, Dooley's two remarks, even if taken as responses to the content of McDermott's complaints, are too isolated to support a cognizable case of causation given that they occurred over a three-year period when McDermott, as he acknowledges, was "[c]onstantly," ROA 757, reporting

safety issues to Dooley. The first remark also was not sufficiently "proximate in time to the act of termination," *Conway v. Paisley House*, No. 02CA135, 2003 WL 22038192, at *4 (Ohio Ct. App. Aug. 28, 2003), as it occurred roughly a year before McDermott was terminated. *See Phelps*, 986 F.2d at 1026 (holding comments "made . . . nearly a year" before a termination "were made too long before the layoff to have influenced the termination decision."). And McDermott has not shown when the second remark was made. At any rate, he has "presented no evidence to place the alleged remark[s] in the context of any employment decision." *Hershberger v. Altercare, Inc.*, No. 2006CA00167, 2007 WL 926476, at *9 (Ohio Ct. App. Mar. 26, 2007). Ohio courts have made it clear that stray remarks, unrelated to the decision-making process at issue, are insufficient even when "the decision-maker is the one making the comment." *Brewer v. Cleveland City Schs. Bd. of Educ.*, 701 N.E.2d 1023, 1027 (Ohio Ct. App. 1997).

Third, a jury could not infer causation based on the bare fact that McDermott made numerous safety complaints. McDermott has not produced any evidence establishing a causal link between his complaints and his discharge other than his own opinion that Dooley "wanted me fired because I reported those safety violations," ROA 390, and the opinion of a co-worker that Dooley retaliated against McDermott for "report[ing] safety concerns," ROA 770. But unelaborated and unsubstantiated conclusions, whether offered by the employee himself or by a co-worker who did not participate in the decision-making process, do not create the necessary causal link. *Atkinson*

*v. Akron Bd. of Educ.*, No. 22805, 2006 WL 551551, at *8 (Ohio Ct. App. Mar. 8, 2006); *see also*

*Haley v. Gen. Elec. Co.*, 3 F. App'x 240, 248 (6th Cir. 2001) ("[M]ere opinions expressed by co-

workers who have no direct involvement in the decision-making process have no probative

value. . . .").

McDermott counters that a jury could infer causation from the temporal proximity between

McDermott's call to Continental's Safety Hotline in September of 2005 and his termination four

months later. Dooley had previously asked employees not to call the Hotline—or at least to contact

him first before doing so—and learned on September 23, 2005 that McDermott had called the

Hotline three days earlier. But nothing in the record suggests he was upset by the call. And

temporal proximity alone will not support an inference of retaliatory discrimination unless an

employee is "unable to couple temporal proximity with any . . . other evidence of retaliation because

the" protected conduct and the termination "happened consecutively . . . ." *Mickey v. Zeidler Tool

& Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (suggesting the termination must be "swift[] and

immediate[]").

McDermott's case citations are not to the contrary. In addition to the temporal proximity

between his complaint and termination, the plaintiff in *Little v. BP Exploration & Oil Co.* presented

other evidence of retaliation, including threats against co-workers if they did not manufacture

infractions by the plaintiff. 265 F.3d 357, 365 (6th Cir. 2001). The claimant in *Moore v. KUKA

Welding Sys. & Robot Corp.* likewise had other evidence to support his claim (besides the fact that

three months had elapsed between the complaint and his discharge), namely that he was subject to

increased "disciplinary writeups" and "unwarranted criticism" after filing his complaint. 171 F.3d 1073, 1080 (6th Cir. 1999).

*Overriding Justification*. But even if McDermott could establish a causal link between his safety complaints and his discharge, he still has not shown that Continental did not have an overriding justification—namely, McDermott's lack of candor during the airline's own safety investigation into his accident with the baggage cart—for its employment decision. As permitted under *McDonnell Douglas*, McDermott tries to show that Continental's claimed reason for the discharge was pretextual. *See Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). But, once again, he falls short.

First, he argues that Continental's stated reason for terminating him "has no basis in fact." *Id*. (internal quotation marks and emphasis omitted). To succeed, McDermott must show that Dooley did not honestly believe McDermott was less than forthcoming during the investigation, which turns on whether Dooley made a "reasonably informed and considered decision." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).

Here is what Dooley knew and what he relied upon: McDermott was one of the employees running bags between the planes and baggage claim that night; at least two Continental employees identified McDermott as the bag runner at the time of the accident; and an America West employee, Dennis McKee, identified McDermott as the Continental employee in the baggage makeup area immediately after hearing and feeling a loud noise originating from that area. Dooley also knew that McDermott experienced debilitating chest pains the night of the accident but did not report an on-the-job injury and that McDermott gave several vague and evasive answers regarding his

knowledge of, and possible involvement in, the accident. All of these facts support the conclusion that Dooley's decision was reasonably informed and considered.

Resisting this conclusion, McDermott first alleges that Dooley fabricated parts of the investigation reports. But we require specific facts, not allegations, at the summary judgment stage, *see Henry v. Wausau Bus. Ins. Co.*, 351 F.3d 710, 713 (6th Cir. 2003), and McDermott has no factual support to back up this (serious) allegation. More, none of the witnesses who signed the documents included in the investigation reports, including those present at McDermott's request, submitted an affidavit alleging the documents were later falsified or otherwise untrue.

McDermott separately argues that a proper, non-pretextual investigation would have used a different process to confirm the identify of the Continental employee seen by McKee, would not have relied on an allegedly suspect statement from a Continental employee and would have questioned McDermott about the accident differently. But we do not require "optimal" processes, and these alleged errors are not "too obvious to be unintentional" or otherwise render the investigation "unworthy of credence." *Smith*, 155 F.3d at 807–08 (internal quotation marks omitted).

McDermott also argues that Dooley knew McDermott lacked any motivation to lie about the accident, making Dooley's honest belief subject to genuine dispute. But this consideration, standing alone, could not show by a preponderance of the evidence that Dooley lacked an honest belief in the face of the litany of facts indicating that Dooley's decision was reasonably informed and considered. *See Manzer*, 29 F.3d at 1083 ("The jury may not reject an employer's explanation . . . unless there is a sufficient basis in the evidence for doing so.") (emphasis omitted).

Second, McDermott argues his circumstantial evidence creates a material factual dispute about whether Dooley's stated justification actually motivated McDermott's termination. *See id.* at 1084. To succeed on this ground, the sheer weight of the circumstantial evidence of retaliation must make it more likely than not that Dooley's justification is pretextual. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 547 (6th Cir. 2008). As the discussion of causation shows, a jury could not infer from McDermott's circumstantial evidence that his safety complaints, not his dishonesty, motivated his termination. At best, McDermott "only created a weak issue of fact as to whether [Continental's] reason was untrue." *Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 504 (6th Cir. 2007) (internal citation omitted). When weighed against the "ample evidence" supporting Continental's position, that weak issue of fact is insufficient to avoid summary judgment. *See id.*

Third, McDermott argues his failure to report the accident and cooperate in the investigation is insufficient to explain Continental's termination decision. This *Manzer* prong "ordinarily consists of evidence that other employees . . . were not fired even though they engaged in substantially identical conduct." *Gray v. Toshiba Am. Consumer Prods.*, 263 F.3d 595, 600 (6th Cir. 2001) (internal citation omitted); *see also Smith v. Leggett Wire Co.*, 220 F.3d 752, 762 (6th Cir. 2000) ("[T]he individuals . . . must have dealt with the same supervisor.") (internal quotation marks omitted). The most similarly situated employee McDermott identifies is Dave Catt, who backed a van into a lightpole, failed to report it and was not terminated. Nothing, however, indicates Catt was not forthcoming during the investigation, so he did not engage in substantially identical conduct. That Continental did not terminate employees who caused far greater damage

is similarly irrelevant. Continental terminated McDermott for being less than forthcoming during the accident investigation, not for the amount of damage he caused. Absent any similarly situated employee receiving different treatment, McDermott cannot survive summary judgment under this prong or on his claims of pretext generally.

McDermott alternatively argues that the overriding-justification element is an affirmative defense so we cannot award summary judgment in Continental's favor even if he failed to create a material factual dispute under this element. He is wrong in at least two respects. Ohio courts have consistently held that the employee is "required to prove four elements," including that the "employer lacked an overriding legitimate business justification." *Browning v. Ohio State Hwy. Patrol*, 786 N.E.2d 94, 104 (Ohio Ct. App. 2003). But even if this element were an affirmative defense, Continental has alleged an overriding justification, and summary judgment is appropriate when the moving party has established an uncontroverted affirmative defense. *See Thornton v. Fed. Express Corp.*, 530 F.3d 451, 457–58 (6th Cir. 2008).

B.

McDermott separately argues that the district court abused its discretion in denying his motion to compel discovery, which (he claims) would have helped remedy the factual deficiencies in his opposition to Continental's motion for summary judgment. We disagree.

In his motion to compel, McDermott asked for all documents relating to company-wide accident investigations and disciplinary proceedings in the last five years involving employees that the airline had deemed untruthful. He also sought documents regarding all Continental accident investigations in Ohio and all "disciplinary actions taken against any employee in connection with

any accident investigation conducted in Ohio." ROA 117. Finding the requests overly broad, the district court limited discovery to accidents in Columbus "during the last five years in which an employee has been determined to be untruthful," including any disciplinary actions taken. ROA 117.

The district court did not abuse its discretion in limiting McDermott's discovery request in this way. The court had ample justification for confining discovery to the Columbus airport: "Where, as here, the employment decisions were made locally, discovery may be properly limited to the employing unit." *Scales v. J.C. Bradford and Co.*, 925 F.2d 901, 907 (6th Cir. 1991). The "employing unit" in this instance was the Columbus terminal because Dooley made the discharge decision and because McDermott focused his allegations on Dooley's attitude towards safety and on how he conducted the accident investigation. *See id.* at 906–07 (limiting discovery to the local office where "[t]he focus of plaintiff's complaint was on the treatment she received" by the local office).

The district court also acted well within its discretion in confining discovery to investigations where employees were considered "untruthful." Although McDermott maintains that he needed broader discovery to prove pretext by showing similarly situated employees were not terminated, his request would have covered every employee interviewed as part of an accident investigation because they were all "subject to some degree of scrutiny for possibly lying or concealing information." Appellant's Br. at 57. McDermott cites no legal authority to support this novel definition of "similarly situated," and he has not cited any authority to suggest that a district court abuses its "broad discretion in matters of discovery," *John B. v. Goetz*, 531 F.3d 448, 458 (6th

Cir. 2008), by limiting discovery to the most similarly situated individuals—as opposed to any employee in a large company remotely comparably situated.  No abuse of discretion occurred.

McDermott, at any rate, filed his motion to compel without ever submitting his requests to Continental, and that too supports the district court's decision.  Under the Federal Rules of Civil Procedure, McDermott could "move for an order compelling . . . production" only if Continental failed to produce documents "requested under Rule 34."  Fed R. Civ. P. 37(a)(3)(B); *see also Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1310 (3d Cir. 1995) ("[A] party must first prove that it sought discovery from its opponent" to succeed on a motion to compel).  Because McDermott did not satisfy this threshold requirement for filing a motion to compel, the district court did not abuse—indeed could not have abused—its discretion in denying the motion. *See Petrucelli*, 46 F.3d at 1311.

III.

For these reasons, we affirm.