**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0301n.06

**No. 08-4534**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**May 14, 2010**
LEONARD GREEN, Clerk

| | |
|---|---|
| THOMAS WOOD, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR THE |
| SUMMIT COUNTY FISCAL OFFICE and | ) NORTHERN DISTRICT OF OHIO |
| JOHN A. DONOFRIO, | ) |
| | |
| Defendants-Appellees. | |

Before:  GIBBONS, SUTTON and WHITE, Circuit Judges.

SUTTON, Circuit Judge.  Thomas Wood filed a lawsuit against the Summit County Fiscal Office and its Officer, John Donofrio, invoking state and federal age discrimination laws, the Due Process Clause and the Fifth Amendment.  The district court rejected his claims as a matter of law—some on statute-of-limitations grounds, others on the merits.  We affirm.

I.

From 1978 until December 2005, Wood worked for Summit County, spending his last 23 years in the Information Systems Department of the county Fiscal Office.  Beginning in January 2005, he filed repeated internal complaints against his supervisor, June Garey, accusing her of age discrimination among other things.  All of these complaints were denied.

In October 2005, members of the Fiscal Office discovered that Wood had been lingering in the county's secure computer room after hours. Concerned about a possible security breach, the Office placed Wood on paid administrative leave pending an investigation into his activity.

On October 18, Detective David Brown of the Summit County Sheriff's Department contacted Wood and his attorney, Dennis Thompson, to arrange a meeting to discuss the allegations against Wood. Wood and his attorney were non-committal. In a later conversation, the attorney mentioned that he had a trial coming up for which he had to prepare. On October 20, Detective Brown talked to Wood and emphasized the importance of meeting soon because "the county is not going to want to sit and pay you for your time off so your attorney can go through trial." R.49-9 at 3. On October 21 and again on October 24, the Fiscal Office sent Wood's attorney a letter giving Wood until October 26 to schedule an interview before the county would stop paying him while on leave. On October 26, the Fiscal Office sent Wood notice that he had been charged with insubordination and that there would be a pre-disciplinary hearing on October 31. Wood declined to come to the hearing and was suspended effective November 7, with the Fiscal Office reserving the possibility of further discipline. When he still had not met with Detective Brown (or for that matter anyone else) by December 2, he was fired effective December 5.

Wood filed several administrative appeals with the county, and complaints with the United States Equal Employment Opportunity Commission. Neither route brought him relief, but the EEOC gave him a right-to-sue letter in July 2006, and he filed an action in district court in October 2006.

The magistrate judge recommended summary judgment in favor of the defendants, and the district court, over Wood's objection, granted it in September 2008.

II.

Wood first appeals the district court's finding that he filed his federal and state claims for age discrimination after the expiration of the relevant statutes of limitation. His federal age-discrimination claim addresses the failure to give him promotions, training or a raise in 2003 and 2004, which means that his April and May 2006 filings with the EEOC came long after the 300-day federal statute of limitations had passed. *See* 29 U.S.C. § 626(d)(1)(B).

In rejecting Wood's state-law age-discrimination claim, which was premised on the same adverse actions as the federal claim, the district court applied the 180-day statute of limitations of O.R.C. § 4112.02(N), meaning that Wood's state-law claim was no less time-barred than his federal one. Wood argues that the court erred because Wood never specified the statutory source of his claim, and another provision, § 4112.14, appears to have a six-year statute of limitations. *See Meyer v. United Parcel Serv., Inc.*, 909 N.E.2d 106, 109 n.6 (Ohio 2009). But the responsibility for picking a section of O.R.C. 4112 lies with Wood, not the district court. Sections 4112.02(N) and 4112.14 are mutually exclusive, *see Leininger v. Pioneer Nat'l Latex*, 875 N.E.2d 36, 43–44 (Ohio 2007), and Wood cannot cite both and ask the court to sort it out. Even if it may be "permissible to plead R.C. 4112.02, R.C. 4112.14 and R.C. 4112.99 simultaneously, and in the alternative, an aggrieved employee must elect his sole remedy when an employer files a motion to dismiss." *Raub v.*

No. 08-4534
*Wood v. Summit County Fiscal Office, et al.*

*Garwood*, No. 22210, 2005 WL 662932, at *3 (Ohio Ct. App. Mar. 23, 2005), *appeal dismissed*, 840 N.E.2d 208 (Ohio 2006). Wood never specified his claim in two amended complaints, his response to the motion for summary judgment, his objection to the report and recommendation of the magistrate judge, or in two briefs before this court. The district court did not err by refusing to evaluate a hypothetical claim that Wood never asserted.

Wood persists that the district court should have equitably tolled the statute of limitations for the federal and state age-discrimination claims. But even if his internal complaints to the county in January and June 2005 put the Fiscal Office on notice of his claim, he fails to show that he did not know or have constructive knowledge of the filing date (he was represented by counsel during this period), or that he was diligent in pursuing his claims (he waited nearly four months between the denial of his first internal complaint and the filing of his second). *See Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 376 (6th Cir. 2002). The district court did not abuse its discretion in finding this insufficient to toll the limitations period.

III.

Wood next argues that the Fiscal Office's action—firing him for refusing to cooperate with the investigation—violated his Fifth Amendment privilege against self-incrimination. We disagree.

"[W]hen a State compels testimony by threatening to inflict potent sanctions unless the constitutional privilege is surrendered," it is true, "that testimony is obtained in violation of the Fifth Amendment." *Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977). And when a public employer

- 4 -

fires someone for invoking his Fifth Amendment privilege against self-incrimination, it is also true, that action may in some circumstances establish a cognizable constitutional claim. *Cf. Gardner v. Broderick*, 392 U.S. 273, 279 (1968). But none of this happened here—first, because, as Wood admits, he never invoked the privilege, and, second, because the Fiscal Office told Wood's attorney that it *would not require* Wood to waive the privilege.

Nor does Wood's case implicate the issue of whether a public employer may force an employee to answer potentially incriminating questions without a lawyer present. Detective Brown repeatedly offered to meet with Wood *and* his attorney. Nor does it present the issue of what accommodations, if any, a public employer might have to make to allow an employee's attorney to be present for the interview. *Cf. Modrowoski v. Dep't of Vets. Affairs*, 252 F.3d 1344, 1352–53 (Fed. Cir. 2001). The Fiscal Office did not fire Wood until nearly a month after his attorney told them he would be available to meet, and after the Fiscal Office had spoken with another attorney about setting up a meeting. The county officials fired Wood not because he invoked the privilege and not because he offered to cooperate with the investigation only with a lawyer present but because he refused to cooperate at all. *See Gardner*, 392 U.S. at 278.

Wood responds that the Fiscal Office cannot fire him for failing to answer questions without expressly offering him use immunity or without at least notifying him of the availability of use immunity. *See Garrity v. New Jersey*, 385 U.S. 493, 500 (1967). Regardless of whether notice of immunity might be appropriate in some settings, there was no basis for requiring it here. First of all, Wood was represented by not one but two attorneys, and "no court has held that the government

employer must give notice of *Garrity* immunity to an employee represented by counsel." *Sher v. U.S. Dep't of Vets. Affairs*, 488 F.3d 489, 505 (1st Cir. 2007). Second, Detective Brown never had a chance to ask any potentially incriminating questions because Wood never met with him. "The employee has no right to skip the interview merely because he has reason to think he'll be asked questions the answers to which might be incriminating"; "there can be no duty to warn until the employee is asked specific questions." *Atwell v. Lisle Park Dist.*, 286 F.3d 987, 991 (7th Cir. 2002). No Fifth Amendment violation occurred.

IV.

Wood next argues that his discharge violated the Due Process Clause of the Fourteenth Amendment. *See, e.g.*, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). He concedes, however, that "he waived his right to attend his pre-disciplinary hearing on October 31, 2005, which would normally waive his due process claim." Wood Br. at 48. Attempting to overcome this waiver, he argues that "his due process claim is inextricably intertwined with his . . . Fifth Amendment claim" because "he was fearful . . . that he would be forced to relinquish his Fifth Amendment rights in order to keep his job." *Id.* But that kind of boot-strapping does not help him because, as shown, he does not have a tenable Fifth Amendment claim.

Wood at any rate received plenty of process before and after he was discharged. County officials were in regular contact with Wood through mail, telephone and email to give him notice of the escalating allegations against him. Those officials alerted him when he was first accused of

"repeated unauthorized presence in the Fiscal Office," R.49-8, then sent him a warning that they could not continue to pay him without setting up a meeting between him and Detective Brown, then sent a further warning reiterating the importance of cooperation, then sent a "NOTICE OF INTENT TO DISCIPLINE" for "Insubordination" after continuing failure to meet with Detective Brown, then sent notice of his suspension. The last notice included the findings of the pre-disciplinary hearing he refused to attend and noted that "this suspension is not to be construed as the final and total disciplinary action in this matter" and that "[t]he Fiscal Office expressly retains the right to impose additional discipline, including termination," R.49-15. Finally, nearly two months after the initial investigation began, they sent him notice of his termination.

Along the way, the Fiscal Office gave Wood many opportunities to contest the charges against him. Detective Brown tried to meet with Wood to resolve the original issues between him and the Fiscal Office. When Wood's failure to meet with Detective Brown led to charges of insubordination, the Fiscal Office offered him a pre-disciplinary hearing before suspending him, and, even when he refused to attend, the hearing went on without him before a county hearing officer. Finally, after Wood was terminated, he received a hearing before an attorney, where (over the course of nearly 250 pages of transcript) Wood presented evidence and cross-examined the witnesses against him. When the hearing officer ruled against him, he appealed that ruling to the members of the Summit County Human Resource Commission. Due process requires no more.

V.

Shifting from constitutional to statutory claims, Wood challenges the district court's disposition of his retaliation claim under the Age Discrimination in Employment Act. *See* 29 U.S.C. § 623(d). As Wood sees it, he presented sufficient evidence to go to a jury on the theory that the Fiscal Office disciplined him, then fired him, to retaliate for his earlier age-discrimination complaints. We disagree.

He has no direct evidence of a retaliatory motive, so he must rely on the three-step, burden-shifting requirements of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to state a claim. *See Gieger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009). Let us assume for the sake of argument that Wood can satisfy the first step of *McDonnell Douglas*—the *prima facie* step of establishing a retaliation claim. And let us accept, as the parties do, that at step two of *McDonnell Douglas* the Fiscal Office offered a facially non-discriminatory reason for its actions: Wood's lack of cooperation in the investigation of his after-hours activities.

That leaves the third step: pretext. Wood must establish a triable issue of fact that the Fiscal Office's stated reason for firing him was pretextual, *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–47 (2000), and that it fired him "because" he complained about age discrimination. 29 U.S.C. § 623(d); *cf. Gross v. FBL Fin. Servs., Inc.*, ___ U.S. ____, 129 S. Ct. 2343, 2350–51 (2009).

Case law permits Wood to show pretext in one of three ways: (1) that the stated reason for his discharge—a failure to cooperate with the investigation—has no basis in fact; (2) it was not the real motivation for the termination; or (3) it was insufficient to motivate the termination. *See Harris v. Metro. Gov. of Nashville & Davidson Cty.*, 594 F.3d 476, 486 (6th Cir. 2010). Wood invokes each theory but comes up short on each one.

*First*, the Fiscal Office provided ample evidence that the reason for the discharge was based in fact. There is no denying that the Office had a security policy prohibiting employees from being in the office after hours, and there is no denying that Wood had repeatedly entered the secure computer room after he had clocked out. In bringing the problem to Wood's attention, county officials made several efforts to set up a meeting with Wood to determine what happened and why he was in the office when he should not have been. The record shows that they sent Wood and his attorneys at least four letters during the relevant period (as well as one email), and communicated by telephone at least seven times. In response, Wood was non-committal at first, and became less cooperative as time went on, eventually declining to attend the pre-disciplinary hearing for the charge of insubordination.

His first attorney was too busy with a trial to meet with Detective Brown, and sent a letter that focused less on setting up a meeting than on settling possible "litigation" by having Wood assigned to two years of "paid training" off site. R.49-19. Far from suggesting that Wood was interested in patching things up with the county, the letter stated that, "[f]rom what I understand, the County wants to end its relationship with Mr. Wood" and "he concurs." *Id.* Wood's second attorney

suggested that a meeting with Detective Brown "would very likely never happen" unless the county promised not to charge Wood criminally. R.49-20 at 231. But, although the Fifth Amendment sometimes requires *use* immunity in circumstances like these, it does not require a complete promise not to prosecute. *See Lefkowitz v. Turley*, 414 U.S. 70, 84 (1973).

County officials also allowed Wood time to respond. The county waited eight days while it tried to schedule an interview with him before changing his leave from paid to unpaid. The county waited an additional five days before holding the administrative hearing on his failure to meet with Detective Brown, then an additional seven more days before suspending him, and another twenty-eight days before finally firing him. Whatever role his first attorney's trial played in delaying the interview, that excuse ended when the attorney's trial ended (projected for four weeks before his termination), and when Wood hired a second attorney to represent him in the matter. Perhaps the Fiscal Office could have been even more patient with Wood, but the law does not require that the process be "optimal," only that it be non-discriminatory. *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998). Given these efforts to meet with Wood (and his attorneys) and the time offered to Wood to respond, the county permissibly concluded that Wood failed to cooperate with the investigation.

Wood responds that, in view of his Fifth Amendment right not to incriminate himself, he was not insubordinate. But, as shown, he never invoked that right, and thus cannot rely on it as a basis for refusing to cooperate with the investigation. He adds that he should not be held responsible for the failure to meet with Detective Brown after the original October 26 deadline, because he did not

understand he was still under an obligation to speak with Detective Brown. The record offers no purchase for that theory in view of the serial requests from county officials to Wood (and his attorneys) to meet with him, which continued past that date. At any rate, it is the employer's objectively verified understanding—confirmed by Wood's own attorney—not the employee's subjective view, that matters. *See Harris*, 594 F.3d at 486; *see also Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 502 (6th Cir. 2007).

*Second*, the record establishes that Wood's lack of cooperation was the Fiscal Office's motivation for his discharge. Each stage of the investigation is well documented in letters, emails, transcripts of phones calls and reports, and at each step it becomes more clear what the consequences of Wood's lack of cooperation will be: discharge.

Wood persists that retaliation, not lack of cooperation, drove the decision, pointing to a ten-day suspension he received after filing an earlier complaint. But even assuming Wood's earlier suspension was retaliatory, that would not suffice to show that the decision to investigate a security problem was retaliatory. Nor would it suffice to show that, when he failed to cooperate with the investigation, the resulting discharge was retaliatory.

Wood also tries to establish pretext on the ground that his initial suspension with pay began on the same day that a Summit County Human Resource Compliance Administrator denied a complaint by Wood. But there is nothing suspicious about the timing of the paid suspension given that the Fiscal Office became aware of the security problem in "early October, 2005." R.49-24 ¶ 11.

*Third*, the Fiscal Office's explanation suffices to justify the discharge. The failure to cooperate with an internal investigation of alleged wrongdoing is a frequent, and frequently permissible, basis for discharging an employee. *See, e.g.*, *McDermott v. Continental Airlines, Inc.*, 339 F. App'x 552, 554 (6th Cir. 2009) (upholding rejection of retaliation claim where employee was "discharged . . . because he was not forthcoming" in an investigation); *Maston v. St. John Health Sys., Inc.*, 296 F. App'x 630, 635–36 (10th Cir. 2008); *Johnson v. Ark. State Hosp.*, 282 F. App'x 497, 499 (8th Cir. 2008); *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 785–86 (7th Cir. 2007).

Wood responds that another employee, Tim Hunton, was found in the office after hours, and he was never disciplined. *Cf. Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 600 (6th Cir. 2001). That is true, but the comparison does not support Wood's claim. Like Wood, Hunton was investigated by Detective Brown for being in the office after hours in violation of the Fiscal Office's policy. Like Wood, Hunton was placed on administrative leave during the investigation. But unlike Wood, Hunton cooperated with the investigation, and as a result he saved his job when Detective Brown cleared him of any wrongdoing. If Hunton's case proves anything, it is that Wood *was not* singled out for investigation. All evidence considered, Wood has not established a cognizable claim of retaliation.

VI.

For these reasons, we affirm.

- 12 -