HELENE N. WHITE, Circuit Judge,
concurring in part and dissenting in part.
I concur in the majority opinion with respect to MacDonald-Bass’s worker’s compensation claim. Although this is a close case, I respectfully dissent from the majority’s conclusion that her sex discrimination claim fails. Because I conclude that MacDonald-Bass has established a prima facie case of sex discrimination and sufficient evidence of pretext, I would reverse the district court’s grant of summary judgment.
The district court found that Rowley was not similarly situated for two reasons — he had no “documented performance problems” and he had prior relevant work experience. Macdonald-Bass, 2010 WL 2990100, at *9, 2010 U.S. Dist. LEXIS 75961, at *25. But any documented performance issues go to whether JEJ’s decision to terminate MacDonald-Bass was legitimate and nondiscriminatory, and Rowley’s experience was in welding, not pipe fitting.
This court has “cautioned against improperly considering the employer’s proffered reason for termination as a ‘predicate for finding [the plaintiff] to have failed to make a prima facie case.’ ” Cicero v. Borg-Warner Auto., Inc., 280 F.3d 579, 587 (6th Cir.2002); Wexler v. White’s Fine Furniture, Inc., 817 F.3d 564, 574 (6th Cir.2003) (en banc) (“[A] court may not consider the employer’s alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case.”). By relying on MacDonald-Bass’s alleged performance problems in finding Rowley not similarly situated, the district court “improperly conflat[ed] the distinct stages of the McDonnell Douglas inquiry.” Cline v. Catholic Diocese, 206 F.3d 651, 661 (6th Cir.1999).
The district court’s determination that Rowley was not similarly situated because of his work experience is also problematic. Rowley’s work experience was in welding, and as Johnson acknowledged, Rowley had “very minimal” experience in pipe fitting. The record contains no evidence that experience in welding is relevant to the skills necessary to progress as a pipe fitter. Pipe fitting, for example, involves interpreting isometric drawings, tracing, testing, understanding specs, layout work, material identification and count, and flame cutting. Nothing in the record, including Rowley’s own description of his past work, indicates that he had any experience in these areas. If Rowley’s prior welding experience were as relevant to pipe fitting as JEJ now asserts, one may reasonably question why MacDonald-Bass and Row-ley would both be hired into the same entry-level position of helper.
We have repeatedly held both that a plaintiff “need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered ‘similarly-situated,’ ” Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir.1998); Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d 405, 411 (6th Cir.2008), and that the burden of establishing a prima facie case is not intended to be onerous. Dunlap v. Tenn. Valley Auth., 519 F.3d 626, 630 (6th Cir.2008); see also Dews v. A.B. Dick Co., 231 F.3d 1016, 1022-1023 (6th Cir.2000) (“If ... reasonable minds could differ as to whether a preponderance of the evidence establishes the facts of a [Ti- *730 tie VII] prima facie case, then a question of fact does remain, which the trier of fact will be called upon to answer”)- In my view, MacDonald-Bass met that burden.
MacDonald-Bass also presented evidence from which a reasonable jury could conclude she was treated differently from Rowley. Although MacDonald-Bass was told she could not be considered for pipe-fitting work until she had completed the ABC training program, Rowley was permitted to perform pipe-fitting work before he completed the training. The district court also gave inadequate consideration to MacDonald-Bass’s argument that she was never allowed to get the requisite hands-on training to perform adequately. Johnson testified repeatedly that hands-on training was necessary to progress, and MacDonald-Bass presents ample evidence that she was not given this training.
The district court also found that MacDonald-Bass failed to present sufficient evidence of pretext. The district court rejected MacDonald-Bass’s contention that JEJ’s reason for terminating her had shifted, finding instead that MacDonald-Bass’s alleged performance problems and her physical problems were “interrelated.” The district court determined that MacDonald-Bass had provided “no evidence to suggest that Defendant terminated her employment based on her gender.”
MacDonald-Bass contends that JEJ’s stated reason for terminating her has shifted. We have explained that an employer’s shifting reasons provide evidence of pretext. Cicero, 280 F.3d at 592 (“Shifting justifications over time calls the credibility of those justifications into question.”); see also Clay v. UPS, 501 F.3d 695, 713 (6th Cir.2007) (noting defendant’s “changing rationale” casts doubt on defendant’s stated reason). According to Mae-Donald-Bass’s uncontroverted testimony, Johnson stated she was “going to get hurt” as the reason he was firing her. Other record evidence corroborates that JEJ’s stated reason at the time Johnson fired her was her physical inability to do some of the heavy lifting.
Both at the district court and in this appeal, however, JEJ’s stated reason is MacDonald-Bass’s “poor job performance.” Appellee’s Br. at 29. Although JEJ maintains that part of the reason for MacDonald-Bass’s termination was her physical inability to do the job, JEJ now alleges that MacDonald-Bass needed assistance in reading and interpreting isometric drawings and specs and received the lowest score in an isometric-enhancement course. JEJ attempts to conflate the two reasons, but the emphasis in this litigation on MacDonald-Bass’s alleged performance problems reasonably can be seen as an after-the-fact explanation. The only pre-litigation, documented performance problem involved the isometric enhanced-training class MacDonald-Bass admits was over her head. But she had not reached a point in her training to be equipped to succeed in the class, and even after the class, she continued to receive favorable evaluations. Every evaluation MacDonald-Bass received was acceptable or good, including a pay raise and a favorable job performance evaluation a mere three months before she was terminated. When asked about this discrepancy, Johnson responded that she was given the pay raise, “[b]ased on what she could do, yes.”
Further, everyone — MacDonald-Bass, Younk, Johnson, and Ratell — acknowledges that MacDonald-Bass expressed her concerns that she was not getting hands-on experience. Although JEJ asserts that it attempted to provide MacDonald-Bass with additional training to assist her progression, MacDonald-Bass testified that when she asked Johnson about why she was not permitted to perform hands-on fitting work, Johnson responded that it *731 was not his responsibility and that she should talk to Dave, her foreman. But Dave had already told MacDonald-Bass that he thought it was “ridiculous” that she would be the pipe fitter up front and that he did not want her to do it. MacDonald-Bass also testified that when she complained to Younk about this, he said he was afraid this was going to happen. The record raises a material factual dispute about whether JEJ’s stated reason for terminating MacDonald-Bass is pretextual.
Finally, none of MacDonald-Bass’s performance evaluations contained reference to her purported physical inability to perform the duties of the job, and no one ever discussed with MacDonald-Bass her physical capability to do the job. JEJ now points to various affidavits from MacDonald-Bass’s coworkers referencing her physical problems. But we are “skeptical of undocumented accounts of employee conduct that may have been created post-termination.” Abdulnour v. Campbell Soup Supply Co., LLC, 502 F.3d 496, 502 (6th Cir.2007). JEJ’s reliance on Lara-way’s memo that he wrote when MacDonald-Bass went on medical leave is misplaced. The memo was written before MacDonald-Bass was cleared to return to work without restrictions. JEJ’s unconditional offer to MacDonald-Bass to return to work as a pipe fitter further undercuts its argument that she was incapable of performing the duties of the job.[1]
Making inferences in the light most favorable to MacDonald-Bass, I conclude she has set forth sufficient evidence from which a reasonable jury could choose to disbelieve JEJ’s stated reason. Accordingly, she has demonstrated a material factual dispute about whether JEJ’s stated reason for terminating her is pretext for discrimination.
For these reasons, I conclude the district court’s summary judgment order should be reversed. I therefore respectfully dissent.

. JEJ submitted the letter containing the offer as an exhibit to its motion for summary judg-me'nt in the district court and does not raise any issue with Federal Rule of Evidence 408.