*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0025p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MILTON HARRIS,
     *Plaintiff-Appellee/Cross-Appellant,*

     *v.*

METROPOLITAN GOVERNMENT OF NASHVILLE
AND DAVIDSON COUNTY, TENNESSEE,
     *Defendant-Appellant/Cross-Appellee,*

SCOTT BRUNETTE, ELIZABETH KEEL, FRANK
CIRRINCIONE, MICHAEL TRIBUE,
     *Defendants-Appellees.*

Nos. 08-6329/6330

>

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 04-00762—John T. Nixon, District Judge.

Argued: December 1, 2009

Decided and Filed: February 5, 2010

Before: GUY, RYAN, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Allison L. Bussell, METROPOLITAN DEPARTMENT OF LAW, Nashville, Tennessee, for Appellant. Douglas B. Janney III, LAW OFFICE, Nashville, Tennessee, Mac E. Robinson, Jr., ROBINSON & ROBINSON, Nashville, Tennessee, for Appellees. **ON BRIEF:** Francis H. Young, METROPOLITAN DEPARTMENT OF LAW, Nashville, Tennessee, for Appellant. Douglas B. Janney III, LAW OFFICE, Nashville, Tennessee, Mac E. Robinson, Jr., ROBINSON & ROBINSON, Nashville, Tennessee, Joseph Howell Johnston, Nashville, Tennessee, for Appellees.

1

————————————

**OPINION**

————————————

RALPH B. GUY, JR., Circuit Judge.   Defendant Metropolitan Government of Nashville and Davidson County, Tennessee, appeals from the entry of judgment in the amount of $9,258.82 in favor of plaintiff Milton Harris on his claim that the reduction to his coaching supplement as head boys' varsity basketball coach upon his return from leave violated the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2614(a).  Finding that the district court erred in failing to consider the proffered defense, and concluding that plaintiff was not prejudiced by the adjustment to the basketball coaching supplement, we reverse and enter judgment in favor of defendant on the plaintiff's FMLA claim.

The FMLA claim was only one of many, and plaintiff cross-appeals from the district court's earlier decision granting summary judgment in favor of the Metropolitan Government and the four individual defendants with respect to his claims of age discrimination and retaliation.  Agreeing with the district court, we find that no reasonable juror could conclude that defendants' proffered reasons were pretext either for age discrimination or for retaliation.  Accordingly, we affirm the entry of summary judgment in favor of defendants on those claims.

**I.**

Milton Harris was a veteran teacher and coach in the Metropolitan Nashville School System.  From 1993 to 2003, Harris taught health and served as the head boys' varsity basketball coach at McGavock High School.  Each year that plaintiff coached, he received a "coaching supplement" that was calculated based on his gross annual teaching salary.  Yearly coaching assignments were made by the principal and coaching supplements were paid over the whole school year, beginning with the first pay period in the fall, regardless of when the season began.  In 2003, the boys' basketball head coach supplement was twelve percent (12%).[1]

———————————————————————————

[1]Plaintiff also received a six percent (6%) supplement for serving as assistant track coach, which is not at issue in this appeal.

The basketball team did not have a winning season under plaintiff's leadership until the 2001-2002 and 2002-2003 seasons, although plaintiff received the "Coach of the Year Award" from the Nashville Black Coaches Association for 2002-2003. Plaintiff's performance evaluation from May 2003 reflected several areas in need of improvement, consistent with concerns expressed by McGavock's Executive Principal Michael Tribue and incorporated into the evaluation by McGavock's Athletic Director Dr. Frank Cirrincione. Cirrincione commented on the evaluation, however, that "Coach Harris is striving to improve the image of the team and coaching staff" and "is working toward changing the negative perceptions in his program." Despite his concerns, Tribue assigned plaintiff to be the head boys' varsity basketball coach for the following year because he said plaintiff was the best person for the job at the time.

Plaintiff reported for school in August 2003 and worked several days before taking leave to undergo prostate cancer surgery. He returned to work in mid-October and held a few meetings regarding the upcoming basketball season. Plaintiff worked only five days, however, before he suffered a heart attack that kept him from returning to work until January 12, 2004. In plaintiff's absence, the basketball team was coached by Marlon Simms, the assistant coach who received a six percent (6%) coaching supplement, and Terry Watson, a volunteer coach who died suddenly during the season and was replaced by Arcentae Broome.

Simms visited plaintiff while he was recuperating and consulted with him about coaching matters. During tryouts in November 2003, Simms approached Tribue for advice because plaintiff had asked that Simms cut an athlete from the team. Tribue testified that he believed plaintiff's reasons had to do with a conflict with the parents and advised Simms to do what he thought best. The athlete made the team and became one of its top three players.

In December 2003, after the basketball season was underway, Cirrincione talked to Tribue about the fact that Broome was not being paid anything to coach. Principal Tribue spoke to Scott Brunette, the Athletic Director for the Metropolitan Nashville

Schools, who, in turn, spoke to Dr. June Keel, the Assistant Superintendent for Human Resources for the Metropolitan Nashville Schools.  Keel advised them both that two people could not receive the head coaching supplement, and that an employee was not entitled to receive a coaching supplement while on leave.  Although Keel denied it, Brunette testified that she also opined that the FMLA did not apply to coaching supplements.  On December 17, 2003, Cirrincione made a written request that plaintiff be "dropped" as head coach; that Simms be made head coach and receive a 12% coaching supplement; and that Broome be made assistant coach and receive a 7% supplement effective August 11, 2003.  Brunette "okayed" the request by making a notation on that memorandum, but plaintiff was not notified.  In fact, as the district court noted, payroll did not make this change and plaintiff's supplement was calculated at 12% for several more pay periods, with a deduction made against it to recoup the coaching supplement that should not have been paid.

Roughly half of the basketball season was over when plaintiff returned from leave on January 12, 2004.  According to Simms, plaintiff told him that there were "three head coaches" and that there was "no reason for things to change."  When plaintiff's next paycheck was smaller than usual, he contacted payroll and was told that he was not receiving the 12% supplement because he was no longer the head basketball coach.  Plaintiff was very upset and immediately talked to Tribue, who assured him that it was a mistake and reinstated plaintiff as head coach effective as of his return on January 12, 2004.  Plaintiff followed up with a letter to Tribue stating that he trusted the matter was an error and "not an attempt to circumvent the applicable federal and state laws governing employees on authorized sick leave."  Tribue responded in a letter dated January 22, 2004, confirming the plaintiff's reinstatement but advising him that, according to human resources, the coaching supplement could not be paid for the period that plaintiff was not coaching.[2]

---

[2]Plaintiff incorrectly describes this letter as stating that he could not get the supplement because he had not coached 2/3 of the games.  The letter did not say this.  Further, the witnesses testified that this 2/3 rule, although new to the 2003-2004 Agreement on Coaching Responsibilities, had nothing to do with the number of contests that a coach must attend but, rather, with the number of contests that must be scheduled for the team in order for a coach to receive a coaching supplement.

Tribue also sent Brunette a memorandum requesting that plaintiff be reinstated, on which Brunette made a hand-written notation of "ok" and "½ of 12%." There was evidence that this proration was defendant's policy, although plaintiff disputed whether it had been followed in every case. The "Agreement on Coaching Responsibilities for 2003-2004," which plaintiff did not sign until he returned from leave, reiterated that coaching assignments were made on a yearly basis and provided, among other things, that the coach agreed that he would have to "[c]omplete the season to receive the full supplement . . . [and would] be required to pay back any supplement not earned."

In this case, plaintiff's payroll history reflected an adjustment in January 2004 to a 6% basketball coaching supplement from which deductions were made to "recoup" overpayments made while plaintiff was on leave. The parties stipulated with respect to damages, (1) that the full 12% coaching supplement would have been a total of $6,812.93 for the year, and (2) that plaintiff actually received a total of $3,728.16 for the year—or a little more than half of the full supplement amount.

Plaintiff complained that despite his reinstatement there were several instances— before and after he filed his EEOC charge in February 2004—in which Simms was treated or referred to as the head coach. Plaintiff also felt he was mistreated with respect to classroom assignment, class composition, and the cancellation of the summer basketball league without consulting with him. While plaintiff claimed that Tribue ignored him, Tribue testified that it was plaintiff who avoided him and refused to acknowledge him during a track meet.[3]

Tribue did not make the coaching assignments for boys' basketball at the same time as he made the other coaching assignments for the 2004-2005 school year. Tribue met with Brunette and Keel to discuss naming a different head basketball coach, and they cautioned him that plaintiff might claim retaliation. Plaintiff received an EEOC right-to-sue letter, and filed this action on August 26, 2004. In a letter dated October 14,

---

[3]The district court found that these perceived slights would not state a claim, and plaintiff does not challenge that finding on appeal.

2004, Tribue notified plaintiff that he would not be reassigned as the head basketball coach and identified several reasons for that decision. Tribue solicited applicants, interviewed two candidates, and selected Simms to be the head boys' varsity basketball coach for the 2004-2005 season. Plaintiff amended his complaint to allege that he was denied reassignment as the boys' basketball coach because of his race, his age, and in retaliation for engaging in protected activity. Plaintiff continued to teach until he retired at the end of the 2005-2006 school year.

After being filed in August 2004, this case progressed through resolution of various dispositive motions, amendments to the complaint, and the taking of discovery. For the reasons set forth in its opinion and order entered on April 5, 2006, the district court granted summary judgment to defendants on all of the plaintiff's claims, except for the FMLA and breach of contract claims asserted against the Metropolitan Government. Plaintiff made a motion for reconsideration with respect to the retaliation and age discrimination claims, only, which was denied on May 26, 2006. Just prior to the entry of that order, the case was reassigned to another district court judge for all further proceedings.

Trial, scheduled to begin in late June 2006, was continued without objection from the defendant, but, instead of a new trial date, a status conference was scheduled and mediation was attempted without success. In January 2007, a trial date was set for September 18, 2007, and then, on September 5, 2007, trial was continued until July 15, 2008, and again until August 12, 2008. On July 31, 2008, the day before the final pretrial conference, plaintiff sought leave to file a motion for summary judgment. Although that motion was denied, new counsel for plaintiff convinced the district court at the final pretrial conference to allow plaintiff to file a motion for judgment as a matter of law. Plaintiff's motion was filed on August 5, defendant responded on August 6, and the motion was granted from the bench on August 7, 2008.

The district court's order, entered on August 21, 2008, found that defendant's failure to fully restore plaintiff's compensation upon reinstatement—namely, the 12%

coaching supplement—violated the FMLA's proscription that "any eligible employee who takes leave under section 2612 . . . shall be entitled, on return from such leave . . . to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(B). The district court also concluded that defendant breached the 2003-2004 Education Agreement's provision that: "Upon returning from leave the employee shall be restored to the same position of employment or an equivalent position with no loss of benefits, pay or other terms of employment and consistent with TCA 49-5-705." That is, the court found that the contract incorporated the FMLA's restoration rights.[4]

After a hearing, damages were awarded under the FMLA, only. Specifically, the district court awarded plaintiff $3,084.77 (the stipulated portion of the full 12% coaching supplement that plaintiff did not receive for the 2003-2004 season), plus 10% prejudgment interest under Tennessee law from May 2004 through entry of judgment in August 2008. In addition, the district court also awarded liquidated damages under the FMLA based on a finding that defendant had neither acted in good faith, nor had reasonable grounds for believing its actions were not in violation of the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii). This appeal followed.

## II.

### A.      Metropolitan Government's Appeal

The Metropolitan Government argues that the decision granting the motion that plaintiff styled as a motion for judgment as a matter of law was procedurally flawed and failed to consider the substance of its defense to the FMLA claim. While a motion for judgment as a matter of law under Fed. R. Civ. P. 50 is not a proper pretrial motion, it is clear to us that the district court considered matters outside the pleadings and determined that there were no genuine issues of material fact for trial with respect to

---

[4]The Tennessee statute provides that upon return from leave within 12 months, an interim teacher shall relinquish the position and the teacher shall return to the position. TENN. CODE ANN. § 49-5-705. Tennessee statutes also address sick leave accumulation and use, including the advancement of unearned sick leave and the use of leave donated to a sick leave bank.

liability.  Although the order did not specify the nature of the motion, we read the decision to be one granting summary judgment under Fed. R. Civ. P. 56(c).  Summary judgment is proper when, viewing the facts and drawing all inferences in the light most favorable to the nonmoving party, there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  A district court's order granting summary judgment is reviewed *de novo*.  *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997); *see also Med. Mut. of Ohio v. k. Amalia Enters. Inc.*, 548 F.3d 383, 389-90 (6th Cir. 2008).

"This court recognizes two distinct theories for recovery under the FMLA: (1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004).  For a claim of interference, which is the theory asserted here, the plaintiff must establish that (1) he was an eligible employee, (2) defendant was a covered employer, (3) he was entitled to leave under the FMLA, (4) he gave defendant notice of his intent to take leave, and (5) the defendant denied him FMLA benefits or interfered with FMLA rights to which he was entitled.  *Id.*  Only the last of these was disputed by defendant in this case.

The FMLA entitles an eligible employee to take not more than 12 weeks of unpaid leave, or substituted paid leave, for reasons that include a serious health condition that makes the employee unable to perform the functions of his position.  29 U.S.C. § 2612(a) and (d).  Also, the FMLA provides an employee who returns to work within that 12-week period with a concomitant right "to be restored by the employer to the position of employment held by the employee when the leave commenced;" or "to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."  29 U.S.C. § 2614(a)(1)(A) and (B).  While the FMLA provides that the taking of leave may not result in the loss of any previously accrued "employment benefit," the FMLA does not entitle a restored employee to "(A) the accrual of any seniority or employment benefits during any period of leave;"

or "(B) any right, benefit, or position of employment other than [that] to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3).

In granting judgment on the eve of trial, the district court in this case looked no further than its determination that the coaching supplement was part of plaintiff's "pay" and that plaintiff was not restored to the full 12% coaching stipend when he returned to work.

The payroll records reflect a reduction in plaintiff's basketball coaching supplement to 6% when he was reinstated in January 2004. To find an FMLA violation from this alone, however, elevates form over substance and ignores the defense proffered by the Metropolitan Government that the coaching supplement was not an employment benefit protected under the FMLA, was not included in the paid leave provided by defendant, and was properly adjusted such that plaintiff received the compensation required by the coaching contract consistent with Tennessee law and the FMLA.

The district court understood defendant to rely on the unpublished decision in *Groce* for the proposition that coaching supplements are not "pay" for purposes of the FMLA. *See Groce v. Metro. Gov't*, No. 3:01-1436 (M.D. Tenn. Feb. 28, 2002). The *Groce* case involved another coach also employed by the Metropolitan Government who claimed that the loss of his coaching supplement during his leave violated the FMLA's proscription that the taking of leave not result in the loss of any "employment benefit accrued prior to the date on which the leave commenced." 29 U.S.C. § 2614(a)(2). Concluding that coaching supplements did not fit the FMLA's definition of "employment benefits," the court held that removal of the supplement from the plaintiff's sick leave pay did not violate the FMLA. The significance of the *Groce* decision to defendant's position in this case is its holding that removal of the coaching supplement from plaintiff's pay while on leave would not violate the FMLA.

Although defendant argues that the coaching supplement was not part of plaintiff's "pay," it clearly was part of his compensation. More precisely, however,

plaintiff does not dispute that the coaching supplement was not part of plaintiff's teacher salary or the pay he was entitled to receive while on leave. Tennessee law recognizes that a teacher, who also is employed as an athletic coach, "has two sets of rights, *e.g.*, (1) his position as a teacher is protected by tenure, assuming that he has acquired tenure status, and, (2) his position as a coach is protected by whatever contract he has with the board to perform coaching duties, but not by tenure." *White v. Banks*, 614 S.W.2d 331, 334 (Tenn. 1981). Further, relieving a teacher only of his coaching duties is not a dismissal or a suspension but, rather, is the equivalent of a transfer within the system. *Id.*; *see also Warren v. Polk County Bd. of Educ.*, 613 S.W.2d 222, 225 (Tenn. 1981). In addressing the arbitration of a grievance seeking reinstatement as a coach, the Tennessee Supreme Court has held that coaching supplements are governed by year-to-year contracts and are not entitled to the benefits of the collective bargaining process in Tennessee. *Lawrence County Educ. Ass'n v. Lawrence County Bd. of Educ.*, 244 S.W.3d 302, 318 (Tenn. 2007).

In this case, plaintiff was under a coaching contract for the 2003-2004 school year, which by its terms provided that the coach would have to complete the season to receive the full supplement and would be required to pay back any supplement not earned. Plaintiff received paid leave as a teacher, not a coach, and was not entitled to receive the full supplement for basketball because he missed half of the season. In fact, plaintiff does not claim that defendant was *required* to pay the basketball coaching supplement while he was on leave or for the portion of the season that he missed. Rather, plaintiff argues that, having paid the biweekly prorated supplement during plaintiff's leave, defendant could not reduce the amount of the supplement paid to plaintiff upon reinstatement without violating the FMLA. That is, plaintiff argues, the reduction in the supplement to 6% and deductions for overpayments received in the fall, constituted a failure to restore plaintiff to the same or equivalent pay he had when he went on FMLA leave as a matter of law.

The district court agreed with plaintiff, emphasizing that an employer's intent is not relevant to an FMLA claim under the interference theory. *Edgar v. JAC Prods., Inc.*,

443 F.3d 501, 507 (6th Cir. 2006).  However, this court has also recognized that "the FMLA is not a strict-liability statute."  *Id.* (citing *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005)).  "[I]nterference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct."  *Id.* at 508; *see also Allen v. Butler County Comm'rs*, 331 F. App'x 389, 393 (6th Cir. 2009) (holding that employee on FMLA leave could be terminated for violating more stringent requirements of employer's sick leave policy).

The evidence showed that, under defendant's policies, plaintiff was not entitled to the coaching supplement for the period when he did not coach.  How that was to be achieved, however, is less than clear.  Tribue testified that he intended for plaintiff to be reinstated to the 12% supplement.  Brunette testified that he approved the request to reinstate plaintiff as head coach, but calculated that plaintiff had missed half of the season so could only receive the 12% supplement for the second half of the season.  Payroll records indicate that Brunette's notation of "½ of 12%" was interpreted to mean 6% for the full year (with deductions to offset the overpayment at the 12% rate during plaintiff's leave).

Had payroll calculated the amount differently upon plaintiff's reinstatement (*i.e.*, paying 12% supplement per pay period with deduction of 12% per pay period for the amounts advanced during plaintiff's leave), there would arguably have been no reduction at all in the plaintiff's rate of pay.  In fact, if the coaching supplement had been paid as a lump sum after the completion of the season, payment of "½ of 12%" would not even arguably violate the letter of the FMLA's restoration provision because plaintiff would have received the additional pay after his reinstatement.  Defendant's failure to suspend the biweekly payment of the coaching supplement during plaintiff's leave should not make the correction of the error after plaintiff's return from leave a violation of the

FMLA.[5] The district court erred by failing to consider the defendant's legitimate reason for adjusting plaintiff's coaching supplement unrelated to the exercise of FMLA rights.

Moreover, even if plaintiff could prove an FMLA violation under § 2615(a)(1), the FMLA provides no relief unless the plaintiff has been prejudiced by the violation. *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 726 (6th Cir. 2003); *see also* 29 U.S.C. § 2617(a)(1)(A)(i)(I) (employer liable for compensation and benefits lost "by reason of the violation"). A plaintiff seeking relief under the interference or entitlement theory must show that the violation caused him harm. *Edgar*, 443 F.3d at 508 (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)). In this case, defendant has repeatedly argued that, when all was said and done, plaintiff received more than half of the full 12% head basketball coaching supplement for the 2003-2004 season. Irrespective of how the payments were divided, it is undisputed that plaintiff was not prejudiced by the reduction in the coaching supplement after he returned from leave. We find that plaintiff cannot prevail on his FMLA claim as a matter of law and, therefore, defendant is entitled to judgment in its favor on this claim.

**B.     Plaintiff's Cross-Appeal**

Plaintiff limits his cross-appeal to the district court's entry of summary judgment in favor of all of the defendants with respect to his claims that he was not reassigned to be the head basketball coach either (1) because of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a), and the Tennessee Human Rights Act (THRA), Tenn. Code Ann. § 4-21-401(a); or (2) in retaliation for engaging in protected activity in violation of 42 U.S.C. § 1981. In the absence of direct evidence of either age discrimination or retaliation, plaintiff relied on the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05

---

[5]Nor would it violate the collective bargaining agreement's incorporation of FMLA rights.

(1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256-59 (1981).[6]

In this case, the district court found that plaintiff could make the prima facie showing for age discrimination and retaliation, but found that the evidence was not sufficient to lead a reasonable juror to conclude that the proffered reasons were a pretext either for unlawful discrimination or for retaliation. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000). A genuine issue of fact exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### 1.    Age Discrimination

To establish a prima facie case of age discrimination under the ADEA, plaintiff must show that (1) he was at least 40 years old at the time of the alleged discrimination, (2) he was subjected to an adverse employment action, (3) he was otherwise qualified for the position, and (4) he was rejected and someone outside the protected class was selected. *Burzynski v. Cohen*, 264 F.3d 611, 621-22 (6th Cir. 2001). Once the plaintiff makes this showing, the burden of production shifts to the defendant to articulate a nondiscriminatory reason for its action. *Id.* at 622. When the defendant does so, the burden of production shifts back to the plaintiff to show that the employer's proffered reason was mere pretext for intentional age discrimination. *Id.*; *see also Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008). The plaintiff retains the ultimate burden of proving that "age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009); *Ky. Ret. Sys. v. EEOC*, 128 S. Ct. 2361, 2366 (2008).[7]

---

[6]Although the Supreme Court has not definitively decided whether the *McDonnell Douglas* framework applies to disparate treatment claims under the ADEA based on circumstantial evidence, we are without authority to overrule this court's published decisions absent an inconsistent decision of the Supreme Court or an *en banc* decision to the contrary. *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009).

[7]The same analysis applies to such claims under the ADEA and the THRA. *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir. 2006).

## 2.      Retaliation

To make a prima facie showing of retaliation, plaintiff must show that (1) he engaged in protected activity, (2) the activity was known to the defendant, (3) plaintiff was subjected to materially adverse action, and (4) there was a causal connection between the protected activity and the adverse action.  *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 463 (6th Cir. 2001).  Once this showing is made, which defendants do not contest on appeal, the defendant must articulate a legitimate nonretaliatory reason for its action before the burden shifts back to plaintiff to show that the proffered reason was not its true reason but merely a pretext for retaliation.  *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 502 (6th Cir. 2009).  The burden of persuasion remains with the plaintiff throughout.  *Id.*[8]

## 3.      Pretext

Defendants proffered legitimate nondiscriminatory and nonretaliatory reasons for not reappointing plaintiff to coach basketball for the 2004-2005 season.  A plaintiff may demonstrate that an employer's explanation is not credible by demonstrating that the proffered reasons (1) had no basis in fact, (2) did not actually motivate the employer's action, or (3) were insufficient to motivate the employer's action.  *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).  A defendant's proffered reason cannot be proved to be a pretext "unless it is shown *both* that the reason was false, *and* that discrimination [or retaliation] was the real reason."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).

Tribue's letter notifying plaintiff of the decision in October 2004, identified several reasons based on plaintiff's performance during the previous season:  (1) being reported "by several parents and students for discussing other student's team behavior and family/home life"; (2) having instructed Simms to cut a player who "ultimately

---

[8]Plaintiff states in a footnote that he asserted a claim of retaliation under the THRA that was not separately addressed in defendants' motions or the district court's order granting summary judgment. Because retaliation claims under the THRA and § 1981 are governed by the same legal framework, the district court's analysis and our conclusions apply to both.  *Wade*, 259 F.3d at 464.

placed third in overall performance for the 2003-2004 season"; and (3) failing to "read your opponents' strategy and adjust accordingly during a game situation has led to several losses." In addition, Tribue relied on the performance evaluation from May 2003 indicating that improvement was needed in the areas of organization, communication with coaches, public relations, game preparation, effectiveness in working with others, discipline (fairness and consistency), communication with players, and conduct of the team.

Plaintiff argues that the "reports" from parents were vague and not worthy of consideration because disgruntled parents often complain about coaches. Plaintiff cannot complain of a lack of specificity because plaintiff's counsel prefaced his questions about these reports with the statement that he did not need to know the names of the parents or students involved and then did not ask for more specificity about those complaints. Nor has plaintiff argued that they are without basis in fact. Plaintiff also argues that the reports did not involve more egregious conduct than other complaints that Simms had allowed players to play with their underwear showing. It is not difficult to understand, however, that privacy concerns make it particularly inappropriate for a coach to talk about the behavior and home of some students with the parents of other students.

Next, plaintiff denies that he specifically directed Simms to cut the player in question, explaining that he merely told Simms that any player who cannot follow the rules of the team should be cut. While Tribue was not present for their discussion, Tribue testified that Simms sought his advice during tryouts in November 2003 because he was under the impression that plaintiff wanted him to cut the player in question from the team. Tribue also explained that he believed plaintiff had asked Simms to do so because of a perceived conflict with the student's parents. Even if Tribue's understanding was later shown to be "'mistaken, foolish, trivial, or baseless,'" that would not establish pretext since the evidence indicates that Tribue reasonably and honestly believed that to be the situation. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009) (citation omitted).

Plaintiff also questions whether problems with plaintiff's performance motivated the decision. Plaintiff offers no reason to disbelieve Tribue's explanation that plaintiff had demonstrated an inability to read the opponent's strategy and adjust during the game, which resulted in several of the team's losses during the second half of the 2003-2004 season. Plaintiff argues that it must not have motivated the decision because the concerns about plaintiff's performance identified in the May 2003 evaluation did not prevent Tribue from assigning plaintiff to coach for the 2003-2004 season. The evidence shows not only that the areas identified in that evaluation continued to be a problem, but Tribue relied on specific problems with plaintiff's performance during the 2003-2004 season. Tribue concluded that plaintiff was no longer the best person to coach the team, and plaintiff does not come forward with evidence to show that Tribue's reasons were pretextual.

During his deposition, Tribue testified that he also considered plaintiff's public display of disrespect during a track meet in the spring of 2004. Emphasizing that this was not specifically mentioned in Tribue's letter, plaintiff accuses Tribue of offering "shifting justifications" for his decision. Although not specifically referenced in Tribue's letter, the reasons given included plaintiff's problems with communication and effectiveness in working with others. We are not persuaded that this represents the sort of "shifting justifications" that might suggest pretext. *See Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir. 2002) (where employer provided one reason in interrogatories, another in a deposition, and yet another in connection with summary judgment). Moreover, Tribue's reference to what he saw as a public snubbing by a subordinate hardly supports plaintiff's claim that the failure to reappointment him was the result of age discrimination or retaliation.

Finally, plaintiff testified that he was told by a guidance counselor at McGavock that she heard from Tribue that plaintiff would not be allowed to coach the next year whether or not he retired. When pressed, however, plaintiff conceded that the only thing the counselor actually said was that there was a rumor that plaintiff would not be the basketball coach the following year. Plaintiff conceded that he had no evidence that

Tribue was the source of the rumor. Plaintiff also claimed that he was told by another coach that Tribue had said plaintiff would be retiring at the end of 2003-2004. The coach in question, however, attested that he did not recall any conversation to that effect with Tribue. When plaintiff was asked why he thought the decision was based on age discrimination or retaliation, plaintiff responded that he could not think of any other reason.

Viewing the evidence and drawing all inferences in the light most favorable to plaintiff, the district court did not err in finding that plaintiff failed to come forward with evidence from which a rational trier of fact could find that the proffered reasons for not reassigning him as head basketball coach for the 2004-2005 season were pretext for unlawful age discrimination or retaliation.

For the reasons set forth above, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** for entry of judgment in favor of the defendants.