**NOT RECOMMENDED FOR PUBLICATION**
File Name: 15a0535n.06

**No. 14-6518**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 29, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| LUCY M. DEITERS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| MEGAN J. BRENNAN, Postmaster General, United | ) | DISTRICT OF TENNESSEE |
| States Postal Service Agency (Eastern Area), | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: BATCHELDER, GIBBONS, and WHITE, Circuit Judges.

HELENE N. WHITE, Circuit Judge. Lucy Deiters appeals the district court's grant of summary judgment in favor of the Postmaster General (hereafter USPS) in this Title VII retaliation case. We agree with the district court that Deiters presented insufficient evidence of pretext to survive summary judgment, and affirm.

**I.**

Deiters worked at a USPS airport facility from 1999 until 2007, and became a full-time employee in 2005. Deiters asserts that workplace problems began for her in 2007, when she was transferred to the Nashville Processing & Distribution Center (PD & C), a facility known for its racially charged atmosphere. Deiters maintains that the atmosphere there was due largely to the conduct and comments of co-employee Jacqueline Smith. PID 228-30. Deiters is White and Smith African-American. PID 256.

Workplace tension and discord worsened from 2009 on, both women continued complaining to management about the other, and fellow employees and supervisors also complained to management about both women and the tense work environment they created.

On September 29, 2011, after consulting the Labor Relations Office, Manager of Distribution Operations (MDO) Nichols and Distribution Operations Supervisor Cyril Drayton placed Deiters and Smith on off-duty (unpaid) status because of "alleged on-going Unacceptable Conduct and Disruption of the Work Environment." 9/29/11 Letter[1]; PID 3, 217, 295. Ten co-employees and managers were interviewed during the internal investigation that followed, and the resulting report concluded: "there is evidence of hostile work environment created by Jackie Smith and Lucy Deiters." PID 171-79.

Deiters returned to work on October 26, 2011, PID 291, and the Union negotiated a settlement with USPS under which she was compensated for lost time, lost overtime, night differential, and Sunday premium pay. PID 169-70. Smith returned to work as well and was also compensated for lost time under a settlement between the Union and USPS, PID 218-19, but her employment was later terminated effective January 25, 2012.

Deiters filed an EEO complaint in December 2011 alleging that her placement on non-duty status in September 2011 was in retaliation for prior protected activity, specifically, EEO complaints she filed in January 2009, January 2010, and May 2011. PID 285, 290.

The EEO investigated and issued a report, which reflects that USPS management officials stated in interviews that both women were placed on off-duty status because each had complained of, and blamed the other for, a hostile work environment, and because a number of employees on the same shift had complained about the conduct of both women. PID 286, 295-

---

[1] Deiters was on vacation at the time and Smith was on sick leave.

96. The EEO final agency decision concluded that Deiters established a prima facie case of retaliation but did not show that USPS's legitimate explanation for placing her on off-duty status was pretextual. PID 186-91. The EEO Commission affirmed the Agency's finding of no discrimination. PID 196.

Deiters then brought this Title VII retaliation[2] action in federal district court. Complaint filed 4/8/13; PID 1-6, 244-45. The district court granted USPS's motion for summary judgment, agreeing with USPS that Deiters presented insufficient evidence of pretext. PID 677-78.

## II.

Deiters first asserts that the district court erred in failing to consider adverse employment actions other than her emergency placement on off-duty status in the fall of 2011, specifically, being subjected to years of harassment and threats at the PD & C, requiring that she submit to a fitness-for-duty test in August 2008, and the posting of her "mug shot" on USPS property when she was placed on off-duty status. PID 267.

However, Deiters's administrative complaint filed in December 2011 and her federal-court complaint filed in April 2013 do not mention any of these purported adverse employment actions. PID 1-6, 163. In both the administrative proceeding and district court, Deiters asserted only one adverse employment action–that USPS retaliated against her for her prior protected activity by placing her on non-duty status on September 29, 2011. PID 1-6, 180-93, 194-97. We will not consider claims raised for the first time on appeal. *See Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 749 (6th Cir. 2005).

---

[2] Deiters's complaint also alleged violation of the Tennessee Human Rights Act and common-law retaliation, and sought punitive damages, but she conceded in response to USPS's motion for summary judgment that Title VII is her exclusive remedy and that punitive damages are unavailable in a Title VII action. PID 244.

**III.**

Deiters's remaining arguments challenge various aspects of the district court's analysis of pretext. Assuming, as did the district court, that Deiters established a prima facie retaliation case,[3] the burden shifted to USPS to articulate a legitimate, non-retaliatory reason for placing Deiters on non-duty status in September 2011. *Harris v. Metro. Gov't of Nashville & Davidson Cnty.*, 594 F.3d 476, 485 (6th Cir. 2010). USPS proffered a legitimate reason for its adverse employment action: that, after conferring with the Labor Relations Office, MDO Nichols and Supervisor Drayton, determined it was necessary to place Deiters and Smith on non-duty status in order to investigate allegations that both were creating a hostile work environment that impacted co-workers and supervisory employees by causing turmoil, disruption, and loss of productivity. PID 77. The burden then shifted to Deiters to establish pretext.

**A.**

Deiters may establish pretext by showing either that USPS's proffered reason 1) had no basis in fact, 2) did not actually motivate the action, or 3) was insufficient to warrant the adverse action. *Harris*, 594 F.3d at 486. Ultimately, Deiters must prove that USPS's desire to retaliate was the but-for cause of the challenged employment action. *Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013); *Montell v. Diversified Clinical Svcs., Inc.*, 757 F.3d 497, 504 (6th Cir. 2014) (noting that a plaintiff will have to establish that her protected activity was a but-for cause of the employer's adverse action).

---

[3] The burden of establishing a prima facie retaliation case is not onerous. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013). Because Deiters relies on circumstantial evidence, she must demonstrate four elements by a preponderance of the evidence: that she engaged in protected activity under Title VII, her employer knew that she had engaged in protected activity, an adverse employment action, and a causal connection between the adverse employment action and her protected activity. *Id.*

First, Deiters maintains that the district court insufficiently explained how it determined that USPS "made a reasonably informed and considered decision" before placing her on non-duty status, arguing that no "business decision" was made; rather, USPS's "actions in its purported 'business decision' constituted further harassment and adverse employment actions." Appellant Br. 37. But, as the district court determined,[4] the evidence before it, including statements of USPS managers in EEO interviews that both women were placed on off-duty status because each had complained of, and blamed the other for, a hostile work environment, and the statements of co-employees complaining about the conduct of both women and its negative effect on the work environment, suggested that USPS did indeed make a business decision. PID 286, 295-96.

**B.**

Deiters also claims the district court erroneously determined that she and Smith were "treated the same" when Deiters's photograph was posted on the PD&C doors, much to her

---

[4] The district court's opinion concludes:

Plaintiff has failed to show that Defendant's legitimate, nondiscriminatory reason was pretext for retaliation. Defendant has presented evidence that both Plaintiff and Smith were put on emergency placement because of their continuing, disruptive, contentious working relationship. Plaintiff was not singled out; both parties were treated the same. Moreover, Plaintiff's managers conferred with the Postal Service Labor Relations Board prior to taking this action. In addition, Plaintiff admitted that the Union grieved *and settled* her emergency placement in October of 2011.

> Under these circumstances, the Court finds that Defendant made a reasonably informed and considered decision before taking the adverse employment action of placing Plaintiff on emergency placement. Plaintiff cannot establish pretext simply by disagreeing with Defendant's business judgment and choice of actions. Pretext cannot be shown by attacking the business decision itself. *Hein v. All America Plywood Co., Inc.*, 232 F.2d 482, 490 (6th Cir. 2000); *Brocklehurst v. PPG Industries, Inc.*, 123 F.3d 890, 898 (6th Cir. 1997).

PID 677-78 (emphasis in original).

embarrassment, but not Smith's photograph.[5]  Deiters maintains that Smith was not affected as much as she was by being placed on non-duty leave.  Appellant Br. at 39.

As discussed, neither Deiters's administrative complaint or her federal-court complaint claimed that the posting of her photo but not Smith's was an adverse employment action.  We do not address this unpreserved claim, *see Barner*, 399 F.3d at 749, beyond observing that, after Smith and Deiters were returned to work in October 2011, Smith's employment was terminated effective in January 2012, while Deiters was not discharged.

## C.

Deiters asserts that the district court erroneously determined that she attempted to establish pretext only by disagreeing with USPS's business judgment or decision.  She argues that pretext is evident from USPS's failure to follow its own policies and procedures before it placed her on non-duty status.  According to Deiters, emergency placement on non-duty status is only used when an employee does something drastic that may risk harm to employees.  Appellant Br. 42.  But Article 16, § 7 of the collective bargaining agreement allows for emergency placement when an employee may be injurious to self or others.  PID 168.  USPS had received many complaints from employees and supervisors of the constant turmoil between the two women on the workroom floor, frequent outbursts, and frequent crying spells Deiters had.

---

[5] When USPS placed both women on unpaid leave, written notices to that effect were posted on the PD & C Annex doors so that employees would not allow either Deiters or Smith to enter the facility.  That is standard procedure.  It is also standard procedure to post a photograph next to each written notice.  A photo of Deiters was posted, but not of Smith.  Supervisor Drayton testified that he did not post Smith's photo because "they could not find a picture" of Smith.  "'[W]e look to similarly situated employees not to evaluate the employer's business judgment, but to inquire into the employer's motivation and intent' to determine whether the employer was 'motivated by retaliation.'"  *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 503 (6th Cir. 2009) (quoting *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987)).  Here, after Smith and Deiters were returned to work in October 2011, Smith was again placed on non-duty status, and her employment was terminated effective in January 2012.  That her picture was not posted does not support an inference of pretext.

PID 114. In addition, Deiters 2010 EEO complaint alleged that she was frightened by Smith's "threatening stances," near physical run-ins, and glaring, and that she frequently retreated to the women's bathroom sobbing. PID 274-75. We conclude that USPS reasonably believed that the conflict had the potential to be injurious to Dieters, Smith or others.

## D.

Deiters's final challenge is to the district court's statement that Deiters admitted that the Union grieved and settled her emergency placement. PID 678, quoted *supra* n.4. It is not clear what was intended by the observation, but, in any event, the district court did not grant summary judgment on that basis; rather, the court ruled that Deiters failed to present evidence that USPS's proffered reason for placing her on non-duty status either had no basis in fact, or did not actually motivate the action, or was insufficient to warrant the adverse action. *Harris*, 594 F.3d at 486.

For these reasons, we affirm the judgment of the district court.