**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0347n.06

No. 17-2001

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>AMBROSE WILBANKS, JR.,</td><td>)</td><td rowspan="10"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Plaintiff-Appellant,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>YPSILANTI COMMUNITY SCHOOLS;</td><td>)</td></tr>
<tr><td>YPSILANTI PUBLIC SCHOOLS BOARD OF</td><td>)</td></tr>
<tr><td>EDUCATION; BENJAMIN EDMONDSON;</td><td>)</td></tr>
<tr><td>AARON ROSE; DONALD E. WOOD,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Defendants-Appellees.</td><td></td></tr>
</table>

**FILED**
Jul 13, 2018
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

---

**BEFORE: BATCHELDER, SUTTON, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Plaintiff Ambrose Wilbanks, Jr., appeals the district court's grant of summary judgment in favor of his former employer, Ypsilanti Community Schools, on his claims of retaliation under the Americans with Disabilities Act and the Rehabilitation Act. We AFFIRM.

**I.**

Wilbanks was employed as a special-education paraeducator or paraprofessional at various Ypsilanti schools from 2007 until September 2013, when he became a special-education teacher at Ypsilanti Community Schools Middle School. PID 223.[1] In September 2015, Wilbanks and

---

[1] Wilbanks was a probationary teacher at the time his employment was terminated. *See* PID 227-28/ "Probationary Teacher Employment Contract" and PID 301-02/Board Resolution terminating Wilbanks's employment as a "probationary teacher."

his colleagues sent a number of emails to supervisors, several carbon copied to the Middle School Principal, Defendant Aaron Rose, regarding inadequate staffing in the special-education classrooms, including the absence of a paraprofessional in Wilbanks's classroom. In mid-September and early October, Wilbanks was involved in two separate incidents with misbehaving students during which Wilbanks pushed one against a wall, and grabbed the arm of the second. The school's video cameras captured the first incident in full and the second in part. Both students reported the incidents to Defendant Rose. Wilbanks was placed on paid administrative leave pending an investigation. After Defendant Donald Wood, who was Human Resources Director for the school district at the time, conducted an investigation, he recommended to Defendant Board of Education that Wilbanks's employment be terminated for unprofessional conduct, specifically, for physically engaging two students. PID 282-84. The Board voted unanimously to terminate Wilbanks's employment in November 2015. PID 301.

Wilbanks filed a complaint in Washtenaw County Circuit Court, alleging retaliation in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq*., and § 504 of the Rehabilitation Act (RA), 29 U.S.C. § 794, violation of the Michigan Whistleblower's Protection Act, wrongful discharge in violation of public policy, defamation, libel and slander, and intentional infliction of emotional distress. PID 7. Defendants removed the case based on federal jurisdiction. PID 1. Following discovery, Defendants filed a motion for summary judgment, asserting that Wilbanks could not establish three of the four prima-facie elements of a retaliation case under the ADA and RA, nor show that the Board's legitimate non-discriminatory reason for terminating his employment was a pretext for retaliation. PID 129-38. The district court granted Defendants summary judgment. This appeal followed.

## II.

We review de novo the district court's grant of summary judgment, viewing the facts and all reasonable factual inferences in non-movant Wilbanks's favor. *A.C. ex rel. J.C. v. Shelby Cty. Bd. of Educ.*, 711 F.3d 687, 696–97 (6th Cir. 2013).

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter . . ." 42 U.S.C. § 12203(a).

Section 504(a) of the RA provides:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . .

29 U.S.C. § 794(a) (codifying § 504). Section 504 incorporates the anti-retaliation provision of Title VI of the Civil Rights Act by providing:

> The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 . . . shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance . . . .

29 U.S.C. § 794a(2). Title VI's anti-retaliation provision, incorporated by section 504, states:

> No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the [Civil Rights] Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this part.

34 C.F.R. § 100.7(e).

We have explained that:

> [b]oth the ADA and Section 504 prohibit retaliation against any individual because of his or her opposing practices made unlawful by the Acts or otherwise seeking to enforce rights under the Acts. *See, e.g.*, 42 U.S.C. § 12203 and 28 C.F.R. 35.134 (ADA); 29 U.S.C. § 794(a) and 29 C.F.R. § 33.13 (Section 504). The Acts have a similar scope and aim; for purposes of retaliation analysis, cases

> construing either Act are generally applicable to both. *Andrews v. Ohio*, 104 F.3d 803, 807 (6th Cir. 1997); *accord Burns v. City of Columbus*, 91 F.3d 836, 842 (6th Cir. 1996).

*A.C. ex rel. J.C.*, 711 F.3d at 696–97. The anti-retaliation provisions of the ADA and RA grant standing to non-disabled persons who are retaliated against for attempting to protect the rights of the disabled. *See Barker v. Riverside Cty. Office of Educ.*, 584 F.3d 821, 822–23 (9th Cir. 2009) (teacher of disabled students held to have standing to sue her employer, the County Office of Education, where her complaint alleged that she was retaliated against after she voiced concerns that employer was not complying with federal and state law in providing educational services to its disabled students).

Because Wilbanks relies on circumstantial evidence of retaliation, the *McDonnell Douglas* burden-shifting framework applies. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010). To establish a prima facie case of retaliation, Wilbanks must show that (1) he engaged in protected activity under Section 504 or the ADA; (2) Defendants knew of this protected activity; (3) Defendants then took a materially adverse employment action against him; and (4) there was a causal connection between his protected activity and the adverse action. *A.C. ex rel. J.C.*, 711 F.3d at 697. "The burden of establishing a prima facie case of retaliation is not onerous, but one easily met." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

If a prima facie case is established, the defendant must articulate a legitimate non-retaliatory reason for its adverse employment action, after which the burden shifts back to the plaintiff to show that the proffered reason was not the true reason, but merely a pretext for retaliation. *See Harris v. Metro. Gov't of Nashville & Davidson Cty.*, 594 F.3d 476, 485 (6th Cir. 2010). To demonstrate pretext at the summary judgment stage, Wilbanks must show by a preponderance of the evidence either 1) that Defendants' proffered reason for the termination of

his employment had no basis in fact, 2) that the proffered reason was not the true reason, or (3) that it was insufficient to motivate discharge. *See, e.g., Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003); *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009), *as recognized in Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009).

## III.

We assume that Wilbanks established a prima facie case of retaliation under the ADA and RA and proceed to pretext. Wilbanks appears to maintain that he presented sufficient evidence of pretext to survive summary judgment under both the second and third prongs.

**<u>The proffered reasons were not the true reason</u>**

Wilbanks presented no evidence that the Board's termination of his employment was related to protected activity, namely, his emails voicing concerns regarding his and a fellow teacher's classrooms being understaffed and the impact the understaffing had on his students and their Individual Education Programs. The only connection between the emails and his termination is temporal proximity; but, standing alone, the temporal proximity between Wilbanks's emails (September 2015) and the termination of his employment (November 2015) cannot sustain his argument given that his physical altercations with students occurred in September and October 2015. Moreover, after several weeks at the beginning of the school year during which Wilbanks did not have a paraprofessional in his classroom, he was provided with one. Wilbanks's email complaints had stopped on September 25, 2015, before the second physical incident occurred (with DH, on October 4, 2015), and Wilbanks was fired only after this second incident. Under these circumstances, mere temporal proximity cannot support the necessary causal connection.

5

For these reasons, we conclude that Wilbanks presented insufficient evidence that Defendants' reason for terminating his employment was not the true reason.

**The proffered reason was insufficient to motivate the discharge**

Wilbanks presented no evidence that any other school employee had been involved in two incidents with students involving physical contact, much less within weeks of each other and after being told after the first incident that such conduct could not happen again. Principal Rose testified that he had no knowledge of any staff member being involved in two physical altercations with students in 2015-16, Rose's first year as Principal at the Middle School. PID 262.

The only person Wilbanks advances as similarly situated is Principal Rose. After Wilbanks's employment was terminated in November 2015, Principal Rose was involved in an incident with a student in April 2016. PID 260. The student, who was supposed to be waiting for Rose outside Rose's office, left the area four times, went into instructional areas and disrupted classes. PID 260. The student threatened Rose, pushed into Rose and swung at Rose, at which point the student walked away and Rose followed and restrained him. The student ended up with a mark on his neck. Rose testified that as a result of this incident he was placed on administrative leave, the incident was recorded in his employment evaluation, and he was ordered to attend anger-management classes. However, Rose was not required to go before the Board and did not lose his job. PID 260/Rose dep.

Even assuming that Wilbanks and Principal Rose were similarly situated although Wilbanks was a probationary employee, Rose's single incident is not comparable to Wilbanks's two incidents within a period of a few weeks and after being clearly warned that such conduct could never happen again.

Finally, Wilbanks's claim that H.R. Director Wood simply adopted Principal Rose's view of the incidents fails given that the videos capture Wilbanks's physical interactions with DH and PH, and that Wood's letter to the Board setting forth the termination charges does, to some extent, discuss DH's and PH's disruptive conduct preceding the physical interactions with Wilbanks. Wilbanks cites no authority, or school or Board policy, requiring that the Board itself conduct an "independent" investigation after the H.R. Director, in conjunction with the school Principal and school's attorney, conducts such an investigation. Further, Wilbanks's argument that he acted in conformity with school policy by, as he describes it, "putting his hand around the wrist of an aggressive, threatening, impaired child," is largely contradicted by the policies themselves, *see* PID 232-33, 235-36 (YCS Bylaws & Policies on Student Supervision and Welfare, and Bullying and Other Aggressive Behavior Toward Students), DH's description of the incident, and the videos. In addition, Wilbanks's contention that physical intervention toward students is a daily occurrence at the Middle School is unsupported by any evidence.

For the reasons stated, we AFFIRM the district court's grant of summary judgment to Defendants.[2]

---

[2] Given our disposition, we need not address Wilbanks's argument that the district court erred by sua sponte raising procedural due process, deciding sufficient process was accorded him, and then dismissing Wilbanks's retaliation claims based on the Board's having conducted an independent investigation.