NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1197n.06

No. 11-2149

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Nov 20, 2012*
DEBORAH S. HUNT, Clerk

ANDREW G. GIELDA,

    Plaintiff-Appellant,

v.

BANGOR TOWNSHIP SCHOOLS,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

**OPINION**

Before: ROGERS and STRANCH, Circuit Judges; PEARSON, District Judge.[*]

    **BENITA Y. PEARSON, District Judge.** Plaintiff Andrew Gielda appeals the district

court's order granting summary judgment in favor of Defendant Bangor Township Schools (Bangor).

Gielda was an employee of the school district for two years, serving as the principal at both a middle

and elementary school. After two years of employment, the school board voted to not renew

Gielda's contract at a special meeting where Superintendent Tina Kerr testified about Gielda's

ineffectiveness as a school administrator. Gielda brought this lawsuit in the Eastern District of

Michigan alleging gender discrimination, unfair labor practices, and violations of administrative due

process. The district court granted summary judgment for Bangor on all three claims. The Court

affirms the district court's judgment. In the court below, Gielda did not establish that the non-

---

    [*] The Honorable Benita Y. Pearson, United States District Judge for the Northern District
of Ohio, sitting by designation.

discriminatory reason offered by the school board for not renewing his contract was a pretext for gender bias. Likewise, Gielda did not establish that the school board had a discriminatory, anti-union motive for deciding not to renew his contract.

## I. BACKGROUND

Gielda worked in the Standish Sterling Community School System from 1997 to 2007, during which time he served as a middle school and high school assistant principal. In 2007, Gielda was hired to be the principal of Christa McAuliffe Middle School within the Bangor Township School District. Gielda was selected by a hiring committee comprised of, among others, Superintendent Tina Kerr and Assistant Superintendent Richard Heinrich, who found Gielda to be qualified for the position. At about the same time, the committee also hired Beth Robb to serve as the principal of the Bangor Township high school. Gielda testified that he was more experienced than Robb; however, she received a higher salary due to the position. Both Gielda and Robb commenced their employment in the summer of 2007.

Gielda contends that he began facing discrimination at the middle school as soon as his employment started. In his deposition, Gielda testified that Kerr used "snack and chat" and one-on-one meetings with middle school teachers to receive reports about Gielda, and that he was the only school administrator whose staff met with Kerr in this manner. Additionally, a female employee at the school circulated a survey seeking responses regarding teachers' ability to work with Gielda, and male employees were reportedly excluded from the survey. Throughout the year, female employees would call Kerr to complain about Gielda. Cara Barcia, an administrative assistant to Kerr, testified that this was rarely done by teachers prior to Gielda's arrival. Gielda also testified

2

that, after his involvement in contract negotiations held in October 2007, he was told he would not receive an annuity and that his pursuit of an annuity had angered Kerr. Finally, Gielda recalled at least one instance when a female teacher made insubordinate, sexist comments. Gielda testified that Kerr did nothing when he asked for her help to resolve that problem.

In her deposition, Kerr described Gielda's first year as principal differently. Kerr testified that Gielda demonstrated problematic work habits. Gielda only worked twelve days during his first month on the job. He ignored staff concerns and failed to send an introductory letter to them. The problems persisted throughout the year. School staff complained that Gielda was unavailable as an administrator: he frequently left work early, would be dismissive of staff who came to see him in his office, and did not regularly attend school events. Concerns about Gielda's leadership and his interpersonal abilities were expressed by "a number of staff." Moreover, Gielda's evaluation rated him below the required level of performance in 56.6% of the categories.

Prior to the 2008-09 academic year, Kerr decided to move Gielda to the position of principal at the elementary school. While Gielda claims this was done as part of the continued discrimination he faced, Kerr testified that the move was intended to help Gielda, as Kerr had a vested interest in his success because he was the first principal she hired. Thereafter, Gielda and the elementary school principal, Dianna Tuttle, traded positions.

Gielda contends that the discrimination he faced continued during his year at the elementary school. In his deposition, Gielda testified that Michelle Goallie, a teacher at the school, confronted Gielda to inform him that she was to report any issues with him to Kerr. Additionally, Gielda claims he was asked to relinquish his reserved parking spot for Goallie because she was pregnant. Gielda

testified that this was disparate treatment because Tuttle, the previous elementary school principal, was never asked to allow pregnant or injured teachers to use her parking spot.

Kerr testified that Gielda's unsatisfactory performance as a school administrator continued even after he was transferred. Gielda scored lower on his performance evaluation than he did during his time at the middle school. Kerr testified that she held a meeting with Gielda to provide him concrete ways to improve, but this meeting did not help his deteriorating performance. Additionally, Gielda had suspended 132 students from the elementary school during his tenure, a substantial increase compared to 38 suspensions at two other district elementary schools combined. Kerr averred that Robb's performance as a high school principal also was not meeting expectations.

Kerr also testified that she had more meetings with staff members at Robb's school than Gielda's. Robb also received low scores on her performance evaluation.

In March 2009, Kerr informed both Robb and Gielda that she would be recommending that the school board not renew their contracts. Kerr offered an alternative to formal non-renewal: resign in exchange for receiving positive reviews and letters of recommendation from Kerr and Heinrich. While Robb elected to resign, Gielda chose instead to discuss his non-renewal with the school board. On April 23, 2009, the school board conducted a special meeting during which Kerr presented her recommendation and Gielda had an opportunity to reply. In addition to providing evidence of Gielda's performance over the past two years, Kerr also made the following comment concerning Gielda's involvement in labor negotiations that took place in October 2007:

> On October 10th and 12th, I met with the USW (Admin) team to discuss negotiations. Mr. Gielda volunteered to be a representative for the administrative team. These negotiations were tenuous due to Mr. Gielda's own agenda. He insisted

4

> that he should be eligible for the 2007-08 increase and annuity payment. This created some hostility between the team, as well as they felt Mr. Gielda as well as I did that Mr. Gielda should not [be] eligible for a pay raise after only being on the job for two months. His salary and contract was adjusted in July when he began his employment with the district. He still held firm that he thought he should have had the raise, but the administrative team ignored his own agenda and voted to approve the new contract.

The board voted unanimously to not renew Gielda's contract. Subsequently, he was replaced by Margy Dewey as principal.

Gielda asserts his non-renewal was the culmination of Kerr's campaign against him. Gielda notes the testimony of Barcia, who testified that Kerr instructed her to delete a positive review of Gielda after he did not tender a letter of resignation. Barcia further testified that she was asked by Kerr to redact portions of a meeting that referenced Robb's resignation.

On June 25, 2010, Gielda filed a complaint against Bangor in the Eastern District of Michigan alleging three causes of action. Gielda alleged that his contract was not renewed because of his gender, in violation of Title VII of the Civil Rights Act ("Title VII") and the Michigan Elliot Larson Civil Rights Act ("ELCRA"). Gielda also contended that the decision to not renew his contract violated the Taft-Hartley Labor Management Relations Act ("Taft-Hartley") and Michigan Public Employment Relations Act ("PERA") since the decision was based on his involvement in contract negotiations in October 2007. Finally, Gielda averred that the decision to not renew his contract violated the Administrator's Due Process Act.

The district court granted summary judgment for Bangor on all three counts. Specifically, the district court held that Gielda could not establish that the articulated reasons for the non-renewal of his contract were a pretext for gender discrimination. Additionally, the district court found that

5

no reasonable jury could conclude that Gielda's participation in labor negotiations influenced the non-renewal. Finally, the district court noted that the Administrator's Due Process Act requirement that an administrator have the opportunity to meet with the school board to discuss non-renewal was satisfied on April 23, 2009, when Gielda met with the whole school board at his request.[1]

Gielda appeals to this Court on two separate grounds. First, Gielda contends it was reversible error that the district court found there was no genuine issue of material fact as to pretext in his gender discrimination claims under Title VII of the Civil Rights Act and the Michigan Elliot Larson Civil Rights Act. Second, Gielda alleges it was reversible error that the district court granted summary judgment upon his claims arising from the Taft-Hartley Labor Management Relations Act and Michigan Public Employment Relations Act.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*, using the same standard of review applicable in the district court. *Gannt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1045 (6th Cir. 1998). Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In analyzing a motion for summary judgment, we construe all evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255.

---

[1] The district court also found that Gielda abandoned this claim in his response to Bangor's motion for summary judgment.

## III.  ANALYSIS

### A.  Gielda's Gender Discrimination Claims Fail Because He Did Not Prove Bangor's Articulated Reason Was Pretextual.

In his first assignment of error, Gielda alleges that the non-renewal of his contract violated both Title VII and ELCRA.  42 U.S.C. § 2000e, *et seq* and Mich. Comp. Laws § 37.2101, *et seq*. We affirm the district court's ruling granting summary judgment in regard to these claims.

This Circuit reviews Title VII and ELCRA claims under the same standard.  *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999).  In disparate treatment claims involving gender discrimination, a reviewing court applies a three-step "shifting burden approach."  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).  First, the plaintiff bears the burden of establishing a *prima facie* case of gender discrimination.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981) (*quoting McDonnell Douglas*, 411 U.S. at 802).  Next, the defendant must "articulate some legitimate, nondiscriminatory reason for the employee's rejection."  *Id.* (*quoting McDonnell Douglas*, 411 U.S. at 802).  Finally, the plaintiff must prove by a preponderance of the evidence that the articulated legitimate reason is merely a pretext for the discrimination.  *Id.* (*quoting McDonnell Douglas*, 411 U.S. at 804).  At all times, the plaintiff bears the "ultimate burden of persuasion" on the fact that the defendant has intentionally discriminated against the plaintiff.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).  Furthermore, this framework is not to be applied mechanically but rather on a case-by-case basis with consideration given to the specific facts of the present case.  *See Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978).

"To establish a *prima facie* case of employment discrimination, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). In the reverse discrimination context, "a plaintiff satisfies the first prong of the prima facie case by 'demonstrat[ing] background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Leadbetter v. Gilley*, 385 F.3d 683, 690 (6th Cir. 2004) (quoting *Pierce v. Commonwealth Life Ins.*, 40 F.3d 796, 801 (6th Cir. 1994)). When selecting an employee who is similarly situated for comparison purposes, the comparative employee must be similar "in all relevant respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998), *quoted in Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006). A court must also consider whether the similarly situated employees "engaged in acts of comparable seriousness." *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012) (citations omitted). By establishing the *prima facie* case for discrimination, the plaintiff creates a presumption of discrimination. *Burdine*, 450 U.S. at 254.

When the burden shifts to the defendant to "articulate some legitimate reason," the defendant must meet a burden of production. *Id*. In particular, "the defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Hicks*, 509 U.S. at 507. In evaluating the sufficiency of the articulated reason, a court should find

8

that the reason both presents a "legitimate reason for the action" and "frame[s] the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." *Burdine*, 450 U.S. at 255–56. When the defendant articulates a legitimate reason for the plaintiff's termination, the presumption of discrimination is dropped. *Id.* at 255 n.10.

If that burden is satisfied by the defendant, the burden of proving that the proffered reason was pretextual, or not the true reason for the employment decision, shifts to the plaintiff and merges with the ultimate burden of persuasion. *Id.* at 256. In order to prove that the articulated reason of the defendant is pretextual, the plaintiff may prove that the articulated reasons had no basis in fact, did not actually motivate the employer's action, or were insufficient to motivate the employer's action. *Harris v. Metro. Gov't of Nashville & Davidson Cnty.*, 594 F.3d 476, 486 (6th Cir. 2010). The plaintiff may also prove pretext "by offering evidence which challenges the reasonableness of the employer's decision to the extent that such an inquiry sheds light on 'whether the employer's proffered reason for the employment action was its actual motivation.'" *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003), *quoted in Baxter Healthcare Corp.*, 533 F.3d at 393. Additionally, the plaintiff will fail to meet the burden of persuasion "unless it is shown *both* that the [articulated] reason was false, *and* that discrimination was the real reason." *Hicks*, 509 U.S. at 515 (emphasis in original). A court should grant summary judgment in discrimination cases when "the plaintiff only created a weak issue of fact as to whether the defendant's reason was untrue and there is ample evidence to support the employer's position." *Abdulnour v. Campbell Soup Supply Co.*, 502 F.3d 496, 504 (6th Cir. 2007) (internal quotation marks omitted); *see also Chen v. Dow Chem. Co.*, 580 F.3d 394, 402 (6th Cir. 2009) ("Because Chen has not produced evidence from

9

which a reasonable factfinder could doubt that she was fired for performance-related reasons, summary judgment was appropriate on her disparate treatment claim.").

We assume for purposes of argument that Gielda established a prima facie case. The district court correctly determined that Bangor articulated a legitimate, nondiscriminatory reason for the non-renewal of Gielda's contract. As Bangor correctly points out, there was more than ample evidence to support the decision to not renew Gielda's contract due to his performance issues that lasted almost two years. Gielda received unsatisfactory evaluations as an administrator at both the middle and elementary schools. His visibility as an administrator was inadequate both during school hours, as manifest by the number of teacher complaints about his dismissive nature, and after school hours, where it was demonstrated that he rarely made appearances at appropriate school functions. Kerr also noted that this behavior did not improve, even after a number of performance reviews and a transfer to a different school away from teachers allegedly giving Gielda a difficult time. Thus, Bangor met its burden of production by demonstrating a legitimate reason for the adverse employment action.

Gielda, moreover, failed to meet the ultimate burden of proving that the articulated reason for which he was fired was a pretext for gender discrimination. The evidence does not support, nor does Gielda attempt to argue, that the reason articulated by the school board had no basis in fact. Nor was the reason insufficient to motivate the non-renewal. As discussed above, Bangor provided ample evidence that Gielda's performance as principal at two separate Bangor Township schools was inadequate and justified its decision to not renew Gielda's contract. To survive summary

judgment, Gielda must present sufficient evidence demonstrating that Bangor's reason did not actually motivate its non-renewal decision.

Viewing the evidence and drawing all reasonable inferences in favor of Gielda, as is required at summary judgment, Gielda failed to present sufficient evidence to allow a factfinder to conclude that he met the ultimate burden of proving that Bangor discriminated against him based upon his gender. As the district court noted in its memorandum, Gielda attempted to demonstrate pretext by referring to a number of incidents during his two years as a principal that he alleges reflect gender bias; yet, none of Gielda's arguments demonstrate that the school board participated in the discrimination. Gielda argues that the sexist comments made by a teacher during his year at the middle school, the evaluation survey that was circulated among female teachers, and the controversy with the parking spot at the elementary school are indicative of the gender discrimination he faced from various female employees of the school district. But these examples do not demonstrate that the school board, an entity that is independent of the teaching staff at both schools where Gielda worked, discriminated against Gielda because of his gender. It was a middle school teacher, not the school board, that allegedly directed a sexist comment at Gielda. Gielda has also failed to demonstrate how the school board was responsible for the survey that was circulated at the middle school. Similarly, it was a teacher, not the school board, that may or may not have started a controversy over the elementary school parking spot. The school board did not participate in <u>any</u> of these events. Biases, if any, that may have been held by the teachers cannot be imputed to Bangor based upon the record before this Court.

Gielda also argues that Kerr discriminated against him based upon his gender because she permitted teachers to report about him and, further, that Kerr's behavior surrounding his non-renewal suggests that Gielda's gender, not his performance, was the actual motivating factor in termination. Yet again, Gielda has failed to connect the actions of non-school board members to Kerr or Bangor. There is no reliable evidence that the survey conducted about Gielda actually excluded male employees. Even if the survey participants were predominantly female, that does not mean their participation or the motivation for conducting the survey was a consequence of gender discrimination on the part of the school board. Furthermore, Kerr testified that she never reviewed the survey, she did not know what the survey said or how it was presented, and the survey was not initiated by her or the school board. There is also no evidence that the school board relied upon the survey in its decision not to renew Gielda's contract, and, even if there were, Gielda does not demonstrate how that would be probative of gender discrimination in his case.

As for Kerr's failure to provide Gielda with more time to correct his performance after his second year review, Gielda does not demonstrate how this proves the district's reasons were pretextual. Gielda has not contested the fact that he received negative performance reviews at the middle school. The issue is not, as Gielda suggests, a matter of having insufficient time to correct his performance. Indeed, the record shows that Gielda had numerous opportunities to correct the problems Kerr brought to his attention, but either failed to or chose not to do so. Gielda's claim that he did not have enough time to correct his problems after the last of many negative reviews does not prove pretext.

Bangor presented sufficient evidence to demonstrate the absence of any genuine issue that it had a legitimate, nondiscriminatory reason to not renew Gielda's contract and that Gielda failed to show the reason was a pretext to mask gender discrimination. Gielda, in turn, failed to demonstrate a genuine issue of material fact that the articulated reason given by the school board was pretextual and not the actual motivating factor for his non-renewal  Accordingly, the district court's ruling is affirmed with respect to Gielda's Title VII and ELCRA claims.

### B.  Gielda's Unfair Labor Practice Claims Fail as He Did Not Prove that the School Board's Decision Was Motivated By His Participation in a Concerted Activity.

In his second assignment of error, Gielda claims that the non-renewal of his contract was motivated in part by his participation in the October 2007 contract negotiations, which he alleges constitutes a concerted activity protected under the Taft-Hartley Act, 29 U.S.C. § 141, *et seq* and PERA, Mich. Comp. Laws § 423.201, *et seq*.  We affirm the district court's ruling in regard to these claims.

Section 157 of the Taft-Hartley Act provides that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining." 29 U.S.C. § 157.  Section 158, in relevant part, makes it unlawful for an employer to either "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title" or, "by discrimination in regard to hire or tenure of employment or any term or condition of employment, to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(1) and (3).  PERA was written with similar language.

*Compare* 29 U.S.C. §§ 157–58, *with* Mich. Comp. Laws §§ 423.209–210.  Because claims under

Taft-Hartley and PERA are virtually identical, both federal and state court decisions may be used for

guidance.  *See Mich. Emp't Relations Comm'n v. Reeths-Puffer Sch. Dist.*, 215 N.W.2d 672, 675

(Mich. 1974) ("The parties have relied on and we may appropriately look to the federal precedents

for guidance.").

In determining whether an employee has been wrongfully terminated for engaging in

protected activities, the plaintiff bears an initial burden of showing that the protected activity was

a "motivating factor" in the adverse employment decision after the employer has stated the employee

was fired for legitimate reasons.  *Int'l Union, United Auto., Aerospace & Agr. Implement Workers*

*of Am. (UAW), AFL-CIO v. NLRB*, 514 F.3d 574, 585 (6th Cir. 2008).  If the plaintiff can

successfully establish the protected activity was a "motivating factor," then the employer must show

that the adverse employment decision would have occurred even if the employee had not engaged

in the protected activity.  *Id.*; s*ee also NLRB v. Talsol Corp.*, 155 F.3d 785, 797–98 (6th Cir. 1998).

The *prima facie* case for discriminatory motive requires the plaintiff to show "that (1) the

employee was engaged in activity protected under the Act, (2) the employer knew of the activity, and

(3) animus toward the protected activity motivated the employer's adverse action." *NLRB v. Consol.*

*Biscuit Co.*, 301 F. App'x 411, 421 (6th Cir. 2008) (*quoting Ctr. Const. Co., Inc. v. NLRB*, 482 F.3d

425, 435 (6th Cir. 2007)).  The employer's discriminatory motive may be shown through direct and

circumstantial evidence, *ITT Auto. v. NLRB*, 188 F.3d 375, 388 (6th Cir. 1999), and a number of

factors may permit the inference of discrimination, including:

> the company's expressed hostility towards unionization combined with knowledge of the employees' union activities; inconsistencies between the proffered reason for discharge and other actions of the employer; disparate treatment of certain employees compared to other employees with similar work records or offenses; a company's deviation from past practices in implementing the discharge; and proximity in time between the employees' union activities and their discharge.

*NLRB v. Gen. Fabrications Corp.*, 222 F.3d 218, 226 (6th Cir. 2000) (quoting *W.F. Bolin Co. v. NLRB*, 70 F.3d 863, 871 (6th Cir. 1995)).

Applying these principles, it is clear that Gielda cannot establish that Bangor's alleged animus towards his participation in the collective bargaining negotiations motivated the school board not to renew his contract. Gielda has quoted only one paragraph from Kerr's testimony at the April 23 meeting in support of his Taft-Hartley and PERA claims. This paragraph alone does not reflect that the school board was hostile towards unionized teachers or administrators. Additionally, the decision of non-renewal is consistent with the—ultimately unsuccessful—attempts of Kerr to help Gielda to improve his performance as principal. Notwithstanding Gielda's assertions to the contrary, the undisputed evidence reflects that Gielda and Robb were afforded the same options for comparable unsatisfactory work: both had the option either to resign or to go through a formal non-renewal process. Robb was terminated differently because Gielda chose not to tender a letter of resignation as Robb did. Furthermore, Gielda failed to provide evidence showing that the school board deviated from any past practices, such as allowing a principal more than two years to correct ongoing performance issues.

Most fatal to Gielda's claim is the amount of time between his participation in the concerted activity and the adverse employment decision. The negotiations took place on October 10, 2007.

15

The board's decision to not renew Gielda's contract was made during the special meeting held on April 23, 2009, a full eighteen months after the negotiations. At the meeting, Kerr cited Gielda's participation in the negotiations, not for the fact that he participated in a concerted activity, but for the manner in which he participated in the activity and how it is illustrative of his lack of interpersonal skills. As the district court correctly observed, no reasonable juror could conclude that Kerr's comment about Gielda's behavior during the negotiations led the school board to not renew his contract for any reason other than Gielda's persistent inability to cooperate with colleagues.

Furthermore, even if Gielda could somehow establish a *prima facie* case for discriminatory motive, Gielda's claim would still fail because, based upon the record before the Court, Bangor could readily demonstrate that Gielda's non-renewal would have occurred whether or not he participated in negotiations. As discussed above, Gielda received numerous complaints about his work throughout his two years as a principal. His performance did not improve despite a number of attempts to correct the problems, including annual performance evaluations and a transfer to the elementary school. There can only be one reasonable conclusion: the school board would not have renewed Gielda's contract after Kerr testified at length about Gielda's unsatisfactory record whether or not he belonged to a union or participated in concerted activities.

Bangor demonstrated that Gielda was not renewed as a principal because of his unsatisfactory performance. Gielda failed to demonstrate the existence of a genuine issue that his participation in union contract negotiations was a motivating factor in the school board's decision to not renew his contract. The sole quoted passage that Gielda relied upon to show discriminatory motive

demonstrated his ill-suited personality rather than any anti-union bias. The district court's order is therefore affirmed with respect to Gielda's labor practice claims.

## IV. CONCLUSION

For the foregoing reasons, the Court affirms the district court's order granting summary judgment for Bangor.